382 So.2d 1197 (1980)
Elaine P. CANAKARIS, Petitioner,
v.
John M. CANAKARIS, Respondent.
No. 54124.
Supreme Court of Florida.
January 31, 1980.
As Clarified On Denial of Rehearing March 27, 1980.
*1199 William M. Barr, of Raymond, Wilson, Conway, Barr & Burrows, Daytona Beach, for petitioner.
Isham W. Adams, of Adams & Briggs, Daytona Beach, for respondent.

On Clarification
OVERTON, Justice.
This is a petition for writ of certiorari to review a decision of the First District Court of Appeal reported at 356 So.2d 858 (Fla. 1st DCA 1978). The district court reversed the trial court's award to the wife of the husband's undivided one-half interest in their marital home as lump sum alimony, the award of permanent periodic alimony, and attorney's fees. We find conflict with Yandell v. Yandell, 39 So.2d 554 (Fla. 1949); Brown v. Brown, 300 So.2d 719 (Fla. 1st DCA 1974); and Calligarich v. Calligarich, 256 So.2d 60 (Fla. 4th DCA 1971). We have jurisdiction.[1] We reverse the district court and reinstate the judgment of the trial court.
This dissolution proceeding terminated a thirty-three-year marriage, the parties having married when the wife was seventeen and the husband twenty-one. The wife assisted the husband through college and worked in his first medical office and in the hospital started by her husband. This proceeding commenced in 1963 upon a complaint filed by the wife for separate maintenance on grounds of adultery and extreme cruelty. A temporary support order was entered in 1963, with which the parties complied until the final judgment for dissolution was entered in December, 1976. The issues in this cause concern the disposition of wealth accumulated during the marriage and the determination of alimony for the wife.
The financial statements of the parties reflected a significant accumulation of wealth during the marriage. The husband, a medical doctor, operated a hospital located on property owned by the parties. His admitted net worth was $3,749,930. A substantial portion of these assets had been acquired prior to the 1963 separation proceedings. The wife's net worth prior to the dissolution totaled no more than $292,000, and this amount is entirely from her share of jointly held properties, except for a $15,000 inheritance. These jointly held properties were acquired during the marital partnership and were not the result of any premarital or independent source, such as a gift or inheritance. The annual income for the husband from 1971 through 1975 was never less than $130,000, and in 1975 his income was $147,000. During this period the wife's annual income was approximately $1,000. Since their separation, the husband has acquired another home consisting of eighty acres valued at $430,000.
In the final judgment of dissolution, the wife was awarded lump sum alimony consisting of $50,000 in cash and the husband's interest in their jointly owned residence in which she was living; the residence was valued at $75,000. The wife further received the sum of $500 per week permanent periodic alimony and the automobile then in her possession. She retained her undivided one-half interest in the Bunnell General Hospital real estate, which was held by the parties as a tenancy by the entirety. Apart from periodic alimony, the wife received property and assets worth approximately $385,000, a majority of which consisted of her undivided one-half interest in the hospital real estate. The final judgment also *1200 directed the husband to pay the wife's attorney's fees in an amount to be set at a future hearing.
The district court reversed this final judgment, holding the award of the marital home as lump sum alimony improper because "[a] review of the record reveals no special equity of the wife in the marital home." 356 So.2d at 860. The court cited as authority Cann v. Cann, 334 So.2d 325 (Fla. 1st DCA 1976), which held that lump sum alimony should be awarded only where special equities require it or make it possible. The district court also found insufficient evidence indicating needs of the wife which would warrant the periodic alimony award of $500 per week. It remanded the periodic alimony award to the trial court for the limited purpose of "determining, based upon evidence, the needs of the wife." 356 So.2d at 860. Finally, the district court concluded that the award of attorney's fees was improper because the wife had the ability to pay for the services of her attorney. We reject each of these holdings by the district court.
Section 61.08, Florida Statutes, authorizes the trial judge to:
grant alimony to either party, which alimony may be rehabilitative or permanent in nature. In any award of alimony, the court may order periodic payments or payments in lump sum or both... . In determining a proper award of alimony, the court may consider any factor necessary to do equity and justice between the parties. [Emphasis supplied.]
In considering the appropriate criteria for the award of the different types of alimony, it is important that appellate courts avoid establishing inflexible rules that make the achievement of equity between the parties difficult, if not impossible.
The issues presented in this cause require an examination of criteria constituting "lump sum" and "permanent periodic alimony"; both are important elements in the determination of property disposition and support requirements in a dissolution proceeding. The related elements of "special equity" and "exclusive possession of property" are discussed in the accompanying case, Duncan v. Duncan, 379 So.2d 949 (Fla. 1980). We recognize that the decisions in this subject area, both of this Court and of the district courts of appeal, are not reconcilable. It is our intent that these two opinions, to the extent possible, will bring some stability to this area of the law.

Lump Sum Alimony
The district court in the instant decision held that the award of the husband's one-half interest to the wife as lump sum alimony was inappropriate because she had no "special equity" in the marital home. The term "special equity" has regrettably been used by this Court and the district courts of appeal to justify both (1) a nonalimony property interest, and (2) an award of lump sum alimony. The use of the term "special equity" to identify facts which allow an award of lump sum alimony is in fact a misnomer and has caused confusion. To eliminate this confusion, it is necessary to distinguish the purposes for which the two types of "special equity" have been used.
The term "special equity" was created to describe a vested interest in property brought into the marriage or acquired during the marriage because of contribution of services or funds over and above normal marital duties. Eakin v. Eakin, 99 So.2d 854 (Fla. 1958); Heath v. Heath, 103 Fla. 1071, 138 So. 796 (1932). This vested interest is not alimony. The "special equity" doctrine was developed to avoid the inequities of the existing statutory provision which denied alimony to an adulterous wife despite her special contribution of services or funds over and above normal marital duties. Although the statutory prohibitions underlying the formulation of the special equity doctrine no longer exist, this vested interest aspect of the doctrine remains a viable part of our case law.
The term "special equity" has also been used to justify an award of lump sum alimony. When employed in this context, it concerns only whether the equities of the case justify a lump sum award. The property interest or lien concept of "special equity" *1201 is entirely distinct from the determination of parties' equities in a lump sum alimony award. The term "special equity" should not be used when considering lump sum alimony; rather, it should be used only when analyzing a vested property interest of a spouse. See Ball v. Ball, 335 So.2d 5 (Fla. 1976); Eakin v. Eakin; Heath v. Heath.
In granting lump sum alimony, the trial court should be guided by all relevant circumstances to ensure "equity and justice between the parties." § 61.08, Fla. Stat. This Court recognized in Yandell v. Yandell the broad scope of the trial judge's discretion in granting lump sum alimony, consistent with the statutory mandate. The "special equities" referred to in Yandell concern only the general equities of the case. We stated in Yandell:
[O]rdinarily ... a lump award should be made only in those instances where some special equities might require it or make it advisable; for instance, where the wife may have brought to the marriage, or assisted her husband in accumulating, property... . There may be other situations which might justify or possibly require a lump sum award ...
A lump sum allowance of permanent alimony is not "fit, equitable and just" unless the husband is in a position to make payment of the sum so granted over and above the requirements attendant upon the maintenance of his business or employment... .
[W]here the husband's financial condition is such as to enable him to respond to a gross allowance of alimony without jeopardy to his business, profession or employment it may be the better solution to grant such allowance when all other equitable considerations justify it ... .
39 So.2d at 556-57 [citations omitted] [emphasis supplied]. Yandell clearly does not limit the use of lump sum alimony to instances of support or vested property interests. A judge may award lump sum alimony to ensure an equitable distribution of property acquired during the marriage, provided the evidence reflects (1) a justification for such lump sum payment and (2) financial ability of the other spouse to make such payment without substantially endangering his or her economic status. Brown v. Brown. In our opinion, the award of the marital home as lump sum alimony may be coupled with other lump sum alimony or permanent periodic alimony awards if justified by the evidence. The collective use of such alimony awards has been approved recently by this Court in McDonald v. McDonald, 368 So.2d 1283 (Fla. 1979), and by the Third District Court of Appeal. See Hyatt v. Hyatt, 315 So.2d 11 (Fla. 3d DCA 1975); Vandervoort v. Vandervoort, 300 So.2d 694 (Fla. 3d DCA 1974).
Although the award of lump sum alimony is not dependent upon a finding of a prior vested right, there does arise upon the entry of a final judgment of a lump sum award a vested right which is neither terminable upon a spouse's remarriage or death nor subject to modification. It may consist of real or personal property, or may be a monetary award payable in installments. Jurisdiction may be expressly retained, however, to terminate lump sum alimony installment payments upon a spouse's remarriage or death when the parties agree to such a provision in a property settlement agreement. Further, jurisdiction may be retained to enter periodic alimony if found necessary after such termination of lump sum alimony installment payments. See Hyatt v. Hyatt; Langston v. Langston, 257 So.2d 625 (Fla.3d DCA 1972).

Permanent Periodic Alimony
Permanent periodic alimony is used to provide the needs and the necessities of life to a former spouse as they have been established by the marriage of the parties. The two primary elements to be considered when determining permanent periodic alimony are the needs of one spouse for the funds and the ability of the other spouse to provide the necessary funds. The criteria to be used in establishing this need include the parties' earning ability, age, health, education, the duration of the marriage, the *1202 standard of living enjoyed during its course, and the value of the parties' estates.
A spouse's ability to pay may be determined not only from net income, but also net worth, past earnings, and the value of the parties' capital assets. Firestone v. Firestone, 263 So.2d 223 (Fla. 1972). Responsibilities to other dependents for support needs may be considered when determining a spouse's financial capacity.
While permanent periodic alimony is most commonly used to provide support, in limited circumstances its use may be appropriate to balance such inequities as might result from the allocation of income-generating properties acquired during the marriage. Patterson v. Patterson, 315 So.2d 104 (Fla. 4th DCA 1975).
As a general rule, permanent periodic alimony is terminated upon the death of either spouse or the remarriage of the receiving spouse. First National Bank in St. Petersburg v. Ford, 283 So.2d 342 (Fla. 1973); In re Estate of Freeland, 182 So.2d 425 (Fla. 1966).
Once instituted, permanent periodic alimony is subject to modification upon a substantial change of circumstances, Chastain v. Chastain, 73 So.2d 66 (Fla. 1954), and may be converted to rehabilitative alimony if the circumstances warrant such a change in the alimony scheme. Although rehabilitative alimony is not at issue in these proceedings, it is necessary to define its purpose in order to distinguish it from permanent periodic alimony. The principal purpose of rehabilitative alimony is to establish the capacity for self-support of the receiving spouse, either through the redevelopment of previous skills or provision of the training necessary to develop potential supportive skills. Reback v. Reback, 296 So.2d 541 (Fla. 3d DCA 1974). Where appropriate, rehabilitative alimony may be converted to permanent periodic alimony.

Judicial Discretion of the Trial Judge
Dissolution proceedings present a trial judge with the difficult problem of apportioning assets acquired by the parties and providing necessary support. The judge possesses broad discretionary authority to do equity between the parties and has available various remedies to accomplish this purpose, including lump sum alimony, permanent periodic alimony, rehabilitative alimony, child support, a vested special equity in property, and an award of exclusive possession of property. As considered by the trial court, these remedies are interrelated; to the extent of their eventual use, the remedies are part of one overall scheme. It is extremely important that they also be reviewed by appellate courts as a whole, rather than independently.
In order to properly review orders of the trial judge, appellate courts must recognize the distinction between an incorrect application of an existing rule of law and an abuse of discretion. Where a trial judge fails to apply the correct legal rule, as when he refuses to terminate periodic alimony upon remarriage of the receiving spouse, the action is erroneous as a matter of law. This is not an abuse of discretion. The appellate court in reviewing such a situation is correcting an erroneous application of a known rule of law.
However, where the action of the trial judge is within his judicial discretion, as in the establishment of the amount of alimony or award of child custody, the manner of appellate review is altogether different.
Judicial discretion is defined as:
The power exercised by courts to determine questions to which no strict rule of law is applicable but which, from their nature, and the circumstances of the case, are controlled by the personal judgment of the court.
1 Bouvier's Law Dictionary and Concise Encyclopedia 804 (8th ed. 1914). Our trial judges are granted this discretionary power because it is impossible to establish strict rules of law for every conceivable situation which could arise in the course of a domestic relation proceeding. The trial judge can ordinarily best determine what is appropriate and just because only he can personally observe the participants and events of the trial.
*1203 We cite with favor the following statement of the test for review of a judge's discretionary power:
Discretion, in this sense, is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.
Delno v. Market Street Railway Company, 124 F.2d 965, 967 (9th Cir.1942).
In reviewing a true discretionary act, the appellate court must fully recognize the superior vantage point of the trial judge and should apply the "reasonableness" test to determine whether the trial judge abused his discretion. If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion. The discretionary ruling of the trial judge should be disturbed only when his decision fails to satisfy this test of reasonableness.
The discretionary power that is exercised by a trial judge is not, however, without limitation, and both appellate and trial judges should recognize the concern which arises from substantial disparities in domestic judgments resulting from basically similar factual circumstances. The appellate courts have not been helpful in this regard. Our decisions and those of the district courts are difficult, if not impossible, to reconcile. The trial court's discretionary power is subject only to the test of reasonableness, but that test requires a determination of whether there is logic and justification for the result. The trial courts' discretionary power was never intended to be exercised in accordance with whim or caprice of the judge nor in an inconsistent manner. Judges dealing with cases essentially alike should reach the same result. Different results reached from substantially the same facts comport with neither logic nor reasonableness. In this regard, we note the cautionary words of Justice Cardozo concerning the discretionary power of judges:
The judge, even when he is free, is still not wholly free. He is not to innovate at pleasure. He is not a knight-errant roaming at will in pursuit of his own ideal of beauty or of goodness. He is to draw his inspiration from consecrated principles. He is not to yield to spasmodic sentiment, to vague and unregulated benevolence. He is to exercise a discretion informed by tradition, methodized by analogy, disciplined by system, and subordinated to "the primordial necessity of order in the social life." Wide enough in all conscience is the field of discretion that remains.
B. Cardozo, The Nature of the Judicial Process 141 (1921).

The Instant Case
In the instant case there was no rule of law which dictated the property disposition and the alimony terms. The trial judge had the discretionary authority to establish such terms as would be equitable under the circumstances. We find that the award to the wife of $500 a week alimony and the marital home as lump sum alimony, as well as the grant of attorney's fees, was not an abuse of discretion.
Given the factual circumstances of this cause, it is appropriate that we consider the principles enunciated by the First District Court of Appeal in Brown v. Brown, 300 So.2d 719 (Fla. 1st DCA 1974), concerning the distribution of accumulated material wealth in a dissolution proceeding. In speaking for the court, Judge Rawls stated:
How shall the material wealth of a marriage which is being dissolved be divided when one partner, the wife, has contributed her time to the marital home and children of the parties while the husband has pursued the accumulation of material goods. The evolution of the law of alimony that we have reviewed in length shows that today the contributions of each party to the accumulation of material assets must be considered in dissolving the marital partnership. Either *1204 spouse may contribute either by working in the market place or by working as a homemaker. The fact that in one marital venture a spouse is gainfully employed in the market place and pays a housekeeper to rear the children and keep house is not distinguishable from the spouse who devotes his or her full time to the profession of homemaker. The primary factual circumstance is each spouse's contribution to the marital partnership. In the case sub judice, the wife has been shortchanged. The wife has not been adequately compensated for the contribution that she made as a fulltime mother and homemaker to the equal partnership marriage. We hold that the trial court abused its discretion in awarding the wife a pittance of the material assets accumulated in the husband's name during 21 years. In so holding, we emphasize even though the cited authorities on the subject speak of "equal partners" and complete equality as partners, we are not engrafting upon the jurisprudence of this state the law of community property. On the question of alimony the judgment is reversed with instructions to the trial court to enter an award of lump sum alimony sufficient to compensate the wife for her contribution to the marriage.
Id. at 726. The court emphasized that its policy was not grounded upon principles of community property, but on basic fairness; a dissolution award should be sufficient to compensate the wife for her contribution to the marriage.
We recognize that a trial court need not equalize the financial position of the parties. However, a trial judge must ensure that neither spouse passes automatically from misfortune to prosperity or from prosperity to misfortune, and, in viewing the totality of the circumstances, one spouse should not be "shortchanged." Brown v. Brown.
In the instant case, the parties were married when both were quite young. The wife assisted to a limited extent in the profession and business of the husband and maintained the home while the husband achieved substantial success in his medical and business careers. All the wealth and property involved in this proceeding were acquired during the marriage of the parties, and a large part of these assets were acquired prior to the separation. The total amount of property awards to the wife was approximately $385,000, including the original home and a $50,000 lump sum cash award. The total value of the property remaining with the husband exceeded $3.3 million.
We find the district court erred in holding the lump sum alimony award of the husband's one-half interest in the marital home improper; we believe its holding resulted from an improper application of the vested interest "special equity" doctrine. This lump sum alimony award was clearly within the trial court's discretion and was justified as part of an equitable distribution of the property of the parties acquired during their marriage.
We find that the trial court's periodic alimony award of $500 per week was reasonable and should not be disturbed. Given the income of the parties, the length of the marriage and the standard of living enjoyed by the parties, the age and education of the wife, and the totality of the parties' respective financial circumstances, this alimony award is neither unreasonable nor arbitrary.[2] We acknowledge that reasonable persons might differ as to what is an appropriate sum for permanent periodic alimony in this cause, but we find it is within the parameters of reasonableness; therefore, there can be no finding of an abuse of discretion.
The final issue presented to us is whether the award of the wife's attorney's *1205 fees, to be determined at a subsequent hearing, was error. In Cummings v. Cummings, 330 So.2d 134, 136 (Fla. 1976), we cited Mertz v. Mertz, 287 So.2d 691 (Fla. 2d DCA 1973), as correctly stating that the purpose of section 61.16, Florida Statutes, was to ensure that both parties will have similar ability to secure competent legal counsel. Without question, the financial positions of the parties in this proceeding are not the same. The husband has a superior financial ability to secure and pay counsel. It is not necessary that one spouse be completely unable to pay attorney's fees in order for the trial court to require the other spouse to pay these fees. Given the complexity of the cause and the time necessary to appropriately resolve the issues, the award of attorney's fees in this case was proper to avoid an inequitable diminution of the fiscal sums granted the wife in these proceedings.
For the reasons expressed, the decision of the district court is quashed, and the final judgment of the trial court is reinstated.
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD and ALDERMAN, JJ., concur.
SUNDBERG, J., concurs in result only.
NOTES
[1] Art. V, § 3(b)(3), Fla. Const.
[2] We note that the literal economic effect upon the husband of paying alimony of $26,000 is not as demanding as would appear at first impression. All periodic alimony payments are tax deductible; the husband has no tax obligations for the $26,000. Further, because of the husband's tax bracket, the majority of the paid amount would have been lost in taxes. The husband realizes a loss of less than $10,000 annually as a result of this alimony payment.