442 So.2d 203 (1983)
Lawrence P. KUVIN, Petitioner,
v.
Kristina KUVIN, Respondent.
No. 62151.
Supreme Court of Florida.
December 8, 1983.
*204 R. Fred Lewis of Magill, Reid & Lewis, Miami, for petitioner.
Sam Daniels of Daniels & Hicks, Miami, for respondent.
PER CURIAM.
The husband petitions for review of Kuvin v. Kuvin, 412 So.2d 900 (Fla. 3d DCA 1982), asserting that the decision conflicts with several of this Court's decisions, including Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
The parties' twelve-year marriage produced two children, aged eleven and four. The husband, an attorney, was forty-seven at the time of the dissolution. The wife, aged thirty-six, did not work outside the home during the marriage except for a period of a year and a half before the birth of the second child.
The trial judge was presented with evidence that the wife could earn $250 a week as a legal secretary and had a $200 monthly income from farm property. The husband's net income was approximately $49,500, or $4,121.60 a month. The marital home was valued at approximately $213,000, with a $35,000 first mortgage and payments including taxes of $590 a month. The parties owned property in Colorado with $25,000 equity. The wife had separate savings of approximately $18,000, and there was a little under $7,000 in joint bank accounts.
The final judgment ordered a sale of the marital home, with equal division of the proceeds between the parties subject to the wife's receiving $20,000 from the husband's share as lump-sum alimony. The wife was also to receive most of the furniture as partial lump-sum alimony. The Colorado property was ordered sold, with the proceeds divided. The husband was ordered to pay $950 monthly in child support, $1,000 monthly for three years as rehabilitative alimony, and the balance owed on a home improvement loan. The wife appealed the award of rehabilitative rather than permanent alimony and the ordered sale of the marital home. The district court reversed on both points.
The reversal of the rehabilitative alimony award appears to elevate to a rule of law the proposition that a rehabilitable wife *205 who is awarded custody of minor children and who desires to forego rehabilitation and remain at home has a right to do so if her former husband can afford to support her. In the words of the district court:
Mr. Kuvin maintained the home and approved his wife's role as wife and mother [during the marriage]. We see no reason to require Mrs. Kuvin to leave the home and children solely to gain support when Mr. Kuvin is well able to support Mrs. Kuvin and their children while the children are minors. Should Mrs. Kuvin decide to return to the labor market, the court may adjust the alimony upon application [3d DCA citations omitted].
* * * * * *
It is obvious that the legislature has never enacted laws requiring mothers of young children to work outside the home, either during marriage or upon its dissolution, when a husband is able to support his family. Mr. Kuvin approved his wife's decision to fulfill her obligations at home during the marriage, and he is able to continue to provide for his family. We therefore see no reason to order Mrs. Kuvin to seek outside employment.
Kuvin, 412 So.2d at 901-02. The husband's ability to support the wife is only part of the test. It is the role of the trial court to make a determination based not only on the ability of the husband, but also on the need of the wife and the best interests of the parties. As we said in Canakaris,
[t]he two primary elements to be considered when determining permanent periodic alimony are the needs of one spouse for the funds and the ability of the other spouse to provide the necessary funds. The criteria to be used in establishing this need include the parties' earning ability, age, health, education, the duration of the marriage, the standard of living enjoyed during its course and the value of the parties' estates.
382 So.2d at 1201-02.
When a trial court awards rehabilitative rather than permanent alimony, it is a reflection of the court's optimism concerning the likelihood of future rehabilitation. "The principal purpose of rehabilitative alimony is to establish the capacity for self-support of the receiving spouse, either through the redevelopment of previous skills or provision of the training necessary to develop potential supportive skills. [Citations omitted.] Where appropriate, rehabilitative alimony may be converted to permanent periodic alimony." Id. at 1202.
Whether to award permanent or rehabilitative alimony in this cause was a decision within the trial court's discretion. In Canakaris we said:
In reviewing a true discretionary act, the appellate court must fully recognize the superior vantage point of the trial judge and should apply the "reasonableness" test to determine whether the trial judge abused his discretion. If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion. The discretionary ruling of the trial judge should be disturbed only when his decision fails to satisfy this test of reasonableness.
382 So.2d at 1203. The trial court may have determined that although working as a legal secretary at $250 a week would not permit the wife to enjoy her accustomed standard of living, a period of rehabilitation would allow time for her to gain skills to provide for additional income or at least attempt to do so. The record reflects that the wife is a relatively young, able, and healthy woman who has had some post-secondary education and has demonstrated her ability to hold a job. The trial court may well have reasoned that her eventual rehabilitation is far more likely if she begins now, rather than fourteen years hence, when the younger child reaches his majority. After careful review of the record, and mindful of the trial court's superior vantage point, we cannot say that no reasonable person would take the view adopted by the trial court. Rather we find that reasonable persons could differ as to the propriety of the trial court's action. *206 We therefore find no abuse of discretion. The district court erred in substituting its judgment for that of the trial court.
The district court also found that the trial court erred in ordering the sale of the marital home, that the wife should have been awarded exclusive possession during the children's minority, and that the child support award should be increased if the house is sold while the children are still minors. Although it is true that often, undoubtedly more often than not, exclusive possession of the marital home is awarded to the custodial parent of minor children, there is no rule of law mandating such an award. This decision also is one that lies soundly within the trial court's discretion. There is evidence in the record to support the trial judge's determination in this regard  the house is an older one that was in need of extensive repairs at the time of the hearing. The $20,000 awarded the wife out of the husband's share of the proceeds from sale of the house, plus her share of the proceeds of the sale, should permit her to find suitable housing for herself and the children. We find no abuse of discretion nor lack of competent evidence in support of the trial court's determination. "It is not the function of the appellate court to substitute its judgment for that of the trial court through re-evaluation of the testimony and evidence," but rather the test is "whether the judgment of the trial court is supported by competent evidence." Shaw v. Shaw, 334 So.2d 13, 16 (Fla. 1976).
The decision of the district court is quashed and the case remanded for reinstatement of the trial court's final judgment.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD, OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.