GLICKSTEIN, Judge.
This is an appeal from an order, denying the wife’s petition for modification. We reverse and remand as to the wife’s petition. There is no cross appeal by the husband.
The parties’ sixteen year marriage was dissolved by final judgment in 1979. At the time of dissolution, the wife was forty-seven years old and a housewife; the husband, a medical doctor. There were two minor children, whose custody was awarded the wife, who was also granted exclusive use and possession of the marital home and its furnishings until the elder minor child reached majority or went away to college outside Palm Beach County. Thereupon the wife was to become responsible for all the costs of operating and maintaining the home so long as she continued to reside there. The husband was to pay the wife, for six years, rehabilitative alimony of $500 per week. Thereafter her permanent periodic alimony would be $200 per week. Child support was set at $100 per week for each child. The award, which appears in retrospect rather scanty on its face, was not appealed by the wife, who subsequently filed her petition for modification in 1982, alleging that her needs had risen substantially; and that her former husband’s ability to pay had also markedly increased. In his answer and affirmative defenses, the husband alleged that the wife’s expenses had been reduced by virtue of the majority of the elder child; and that he was offering the marital home for sale and the wife’s share of proceeds would provide the wife with adequate revenue for a comfortable existence. He counterpeti-tioned for a reduction in child support, elimination of the alimony award, and a setoff for alimony already paid, alleging the wife’s original financial affidavit was fraudulent.
The wife’s 1982 financial affidavit showed monthly living expenses for herself and the minor child, including mortgage and maintenance costs of the marital home were now $4,816. Her 1978 financial affidavit had shown monthly expenses of $4,275. Her actual 1979 expenses had been $3,500 per month, which discrepancy shall be discussed hereinafter. At the hearing on her petition for modification, she testified that since the dissolution she had borrowed more than $11,000 from parents and friends to meet expenses, the rise in which included an 80% increase in property taxes on the marital home. During withering cross-examination the wife admitted that the 1978 affidavit had been erroneous, but maintained she had obtained the figures from the former husband and had not learned they were inflated until she began paying such items as the mortgage payments herself. The husband’s counsel drew attention to the fact that the wife had not notified the court of the discrepancy for nearly three years.
Besides the approximately $2,000 per month alimony and the $400 per month child support for the remaining minor child, the wife’s only income was $155 per month from a second mortgage. She had obtained a real estate salesman’s license but has not been active in that field, and has otherwise been employed only one month, earning $800. Looking at the record evidence of the husband’s financial picture in a light most favorable to him, his income at the time of the modification proceeding had *311 risen to $160,000; and there had been material increase in his net worth.
Following an extensive hearing the trial court issued its final judgment, in which it stated the following findings of fact.
1. The Respondent/Former Husband’s income and assets have increased significantly since the final dissolution of marriage.
2. The Petitioner/Former Wife’s circumstances have changed since the final dissolution of marriage only to the extent of normal inflation and increased costs of living.
3. During the previous dissolution of marriage proceeding the Petitioner/Former Wife filed a false affidavit with the Trial Court which was not brought to the attention of counsel or the Court until approximately three years after her knowledge of the false affidavit. The Court finds that there was no intentional fraud committed by the Petitioner/Former Wife but that the affidavit was, in fact, false.
[[Image here]]
5. The Court finds that the Petitioner/Former Wife has made little or no effort to rehabilitate herself as was anticipated by the previous Order of this Court dated July 5, 1979, and in fact, still is not gainfully employed despite the fact that more than three years have elapsed out of the six years of rehabilitative alimony previously granted by this Court.
6. Whatever increase in alimony the Petitioner/Former Wife might be entitled to accepting her new affidavit at face value, would be offset by approximately the same amount that her previous false affidavit exaggerated her expenses. While this Court has no way of knowing what the previous Court relied upon it can only be presumed that both counsel for the Former Husband and the Court relied upon the previous affidavit filed by the Wife in the dissolution of marriage proceeding in determining the Former Wife’s needs.
7. The Court finds that it would be inequitable to force the Petitioner/Former Wife to repay the alleged “overages” that may have been paid by the Former Husband since the date of the previous Order as she is presently without means to do so.
8. Based upon the previous Order of this Court the Wife is free to vacate the marital homeplace at any time and reside at any place of her own choosing, thereby substantially reducing her monthly expenses as alleged.
9. The Court finds that the Respondent/Former Husband has made voluntary payments for the mortgage payments during the pendency of this modification, however it would be inequitable to force the Petitioner/Former Wife to repay those amounts at this time or to reduce the alimony amount during the remaining portion of her rehabilitative alimony.
10. The Court finds there was no evidence presented by the Petitioner/Former Wife as to any change of circumstances as to the parties’ remaining minor child.
[[Image here]]
12. The Court finds that to award attorney’s fees to the Petitioner/Former Wife would only encourage this type of frivolous litigation and would be inequitable under the circumstances.
The trial court denied both the former wife’s petition for modification and the former husband’s counterpetition, and ordered each party to bear its own costs and attorney’s fees. This appeal followed.
Pope v. Pope, 342 So.2d 1000 (Fla. 4th DCA 1977), and its progeny make clear that when a husband’s income has markedly improved while a wife’s circumstances have worsened because of the impact of inflation, it is error not to grant the wife a modification of alimony. Yet the trial court found those changes in circumstances, and considered the petition frivolous. The evident bases for refusing the wife’s petition were (1) her false but not fraudulent financial affidavit to the court at the time of the final dissolution three years earlier, or her failure to notify the court *312 promptly when she discovered the overstatement in that affidavit; (2) her failure to become gainfully employed, albeit the six-year period given her to “rehabilitate” herself was only half over, and (3) the fact that if she gave up living in the style to which sixteen years of marriage had accustomed her, by moving out of the marital home, her expenses would not be so high.
There is no question that the first of the above grounds became the feature, not the trailer, in the trial court. Time and again, the husband called to the court’s attention the aspirational decision of this court in Yohanan v. deClaire, 421 So.2d 551, 553 (Fla. 4th DCA 1982), which said: “Both the trial court and the appellant had an absolute right to rely on the truthfulness of the appellee’s financial affidavit.” However, the record does not show other than what the wife contended—that she had used the husband’s figures to compile her original estimates of expenses. More important, the record does not show that the trial judge who presided over the dissolution had originally relied on her affidavit. He did not testify; and the question exists whether any reliance occurred, his having awarded only three-fourths of what the wife said she needed. Surely the husband had not relied on her financial affidavit; he knew what the actual expenses were, having been paying them! We repeat the admonition expressed in Yohanan; and it is uncontradicted that the wife did not promptly apprise the court of the discrepancy. Nevertheless, given the foregoing speculation by the successor trial court, we note further that (a) the wife’s and children’s actual monthly expenses were still some $300 more than the sum of the' alimony and the child support payments, and (b) the wife had borrowed $11,000 to meet expenses. Given the uncontradicted evidence of the wife’s inability to meet expenses in 1982, the significance of the 1979 discrepancy—based on the record—would appear to have meaning only to her—her monthly deficit was not as large as she had feared it would be! In light of our analysis, we feel that we do not violate Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980) by concluding that the trial court here could not conjecture about what the prior trial judge had weighed in determining the amount of alimony originally.
As for the second ground, the trial court was correct when it observed that the wife had acted only minimally toward “rehabilitating” herself. However, the prior trial judge cannot be supposed to have predicted at just what point in time the wife would be in a position to pick up the financial slack left by a deficiency in the amount of money the court required the husband to contribute. Three years into the period of rehabilitative alimony, there was still a minor child at home, which may have been a deterrent to the mother’s applying herself to finding regular work. True, the wife probably has not been as conscientious about becoming employed as she might have been. However, judicial decisions should not reflect flint and steel but a realistic, humanistic perception that may require firmness or otherwise, depending upon the proper application of the law to the facts. To be specific in this case, life deals each of us a succession of hands as our lives progress. Here, a 47 year old woman, who had been a housewife in an affluent home for 16 years has now been dealt losing cards—dissolution and a judicial determination which contemplates traumatic economic adjustment in mid-life by “rehabilitation.” In sum, the trial court here may have properly admonished the wife for half-heartedness about locating a permanent position in the three year period but in light of all of the other facts should not have denied her an increase in alimony because of it. It is one thing for us to theorize about the purposes of rehabilitation; it is quite another to consider the wife’s options in 1982 when the home mortgage payment cannot be met—one does not lightly disregard the howl of the wolf at the door.
Lastly, the trial court pointed out how the wife could cut expenses. It is true that at least by implication the original trial judge had meant for the husband and wife *313 to sell the marital home and divide its proceeds when the older child spread her wings and left the parental nest. However, the record shows there has been disagreement between the parties about how to list the home for sale, so the blame for its not yet being sold cannot be laid entirely on the wife. Moreover, until the sale actually occurs, there would be an increase, not a decrease in the wife’s expenses if she moved out of the marital home. Thus, it really solved nothing to refuse an increase because the wife had not moved out of the marital home.
On remand, the issues of need and ability can be balanced in an equitable manner without the overlay of the earlier affidavit or these other matters superimposed thereon, hopefully obviating any further review by this court.
Finally, since the trial court erred in denying the wife the modification, its failure to order the husband to pay her attorney’s fees, when her claim was meritorious and he had the ability to pay, was also error.
HURLEY, J„ and SMITH, CHARLES E„ Associate Judge, concur.