450 So.2d 284 (1984)
Maureen M. McSWIGAN, Appellant,
v.
James A. McSWIGAN, Appellee.
No. 83-450.
District Court of Appeal of Florida, Fourth District.
May 2, 1984.
Rehearing Denied May 31, 1984.
*285 Jane Kreusler-Walsh and Larry Klein, West Palm Beach, for appellant.
William H. Pruitt of Pruitt & Pruitt, West Palm Beach, for appellee.
HERSEY, Judge.
Maureen M. McSwigan appeals from a final judgment in dissolution proceedings on the basis that she has been shortchanged. We agree and reverse.

THE MARRIAGE
The parties were married on June 30, 1962. At the time of the final hearing the marriage was of twenty years duration and had produced three children, two of whom remained minors. Custody was split by agreement and modest child support, including temporary exclusive possession of the martial residence, was provided.

THE WIFE
Maureen M. McSwigan at the time of the marriage and for a short period of time thereafter worked as a secretary. She then became exclusively a mother, wife and homemaker. She subsequently went back to school and has been working toward her Master's Degree which will permit her to enter the teaching profession. Thus, at the time of the final hearing she had not worked for twenty years but had the potential, upon completing her training, of earning $10,000 to $12,000 per year as a teacher. She is forty-two years old and in good health except for a complaint of cardiac arrhythmia.

THE HUSBAND
James A. McSwigan, forty-six years old and in good health, is a successful practicing attorney. He has earned in excess of $90,000 per year in Ohio but has not yet returned to that level in Florida, earning most recently approximately $60,000 per year as an associate. He obviously has the potential to substantially increase his income.

ASSETS AND LIABILITIES
The indebtedness of the parties was allocated by the final judgment as follows: the husband to repay $9,196; the wife to repay $4,500; the parties jointly to repay $2,460. The marital home has an equity value of approximately $70,000. Upon termination of the wife's exclusive possession, the house will be sold and the proceeds divided between the parties, who are jointly responsible for expenses except that the wife pays for ordinary maintenance.
During the marriage the husband, with a partner, acquired interest in several properties in Ohio. As to those properties generally the court found: "The value of these properties is unascertainable based upon the evidence presented to the court; for, in the depressed real estate market and economy where they are situate, they cannot be sold, nor are they self-sustaining." As to one of the four Ohio properties there was an agreement between the husband and his partner, placed in evidence, providing for a mutual right of first refusal and, upon the death of either partner, an obligation on the survivor to purchase the interest of the deceased for $5,000.
The court determined that neither party had established a special equity in any property of the other.

THE WIFE'S SHARE
Child support, including temporary exclusive possession of the marital home, is not in issue. The final judgment gives the wife a one-half interest in the husband's one-half interest in the agreement pertaining to *286 one of the four Ohio properties (not an interest in the property itself) together with rehabilitative alimony in the amount of $1,000 per month for eighteen months. She is required to assume the sole liability for $4,500 in debts and $1,230 of the joint obligations or a total of $5,730. Of her rehabilitative alimony, after debts, she will therefore be able to retain $12,270 ($18,000 less $5,730). The wife is also to receive assistance with the payment of her attorney's fees and costs.

COMPARISON
Upon termination of the marital partnership the husband exits with an obligation to pay certain debts, child support, and rehabilitative alimony in the amount of $18,000. He has an income of $60,000 with the potential of substantially increasing his earnings in the years to come. The wife, after twenty years of contribution to the marriage in her role as wife, mother and homemaker, receives short-term rehabilitative alimony and an interest in a nebulous agreement which may return her zero dollars. She has been out of the work force for twenty years, is unemployed with the prospect, if she is fortunate and remains in good health, of obtaining a teaching position with an annual income between $10,000 and $12,000, roughly one-sixth of the husband's present earnings.

THE LAW
The concept of marriage as a partnership entitling each of the partners, upon termination, to an equitable share of partnership assets, had its most eloquent beginnings in the case of Brown v. Brown, 300 So.2d 719 (Fla. 1st DCA 1974), cited and quoted with approval in Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). In the now famous words of Judge Rawls:
How shall the material wealth of a marriage which is being dissolved be divided when one partner, the wife, has contributed her time to the marital home and children of the parties while the husband has pursued the accumulation of material goods. The evolution of the law of alimony that we have reviewed in length shows that today the contributions of each party to the accumulation of material assets must be considered in dissolving the marital partnership. Either spouse may contribute either by working in the market place or by working as a homemaker. The fact that in one marital venture a spouse is gainfully employed in the market place and pays a housekeeper to rear the children and keep house is not distinguishable from the spouse who devotes his or her full time to the profession of homemaker. The primary factual circumstance is each spouse's contribution to the marital partnership. In the case sub judice, the wife has been shortchanged. The wife has not been adequately compensated for the contribution that she made as a fulltime mother and homemaker to the equal partnership marriage. We hold that the trial court abused its discretion in awarding the wife a pittance of the material assets accumulated in the husband's name during 21 years. In so holding, we emphasize even though the cited authorities on the subject speak of "equal partners" and complete equality as partners, we are not engrafting upon the jurisprudence of this state the law of community property. On the question of alimony the judgment is reversed with instructions to the trial court to enter an award of lump sum alimony sufficient to compensate the wife for her contribution to the marriage.
Id. at 1203-04 (quoting Brown, 300 So.2d at 726).
Our supreme court in Canakaris added the following explanation of the application of the test enunciated by Judge Rawls:
The court emphasized that its policy was not grounded upon principles of community property, but on basic fairness; a dissolution award should be sufficient to compensate the wife for her contribution to the marriage.
We recognize that a trial court need not equalize the financial position of the parties. However, a trial judge must *287 ensure that neither spouse passes automatically from misfortune to prosperity or from prosperity to misfortune, and, in viewing the totality of the circumstances, one should not be "shortchanged." Brown v. Brown.

382 So.2d at 1204.
This court has on several occasions followed the precepts of Brown and Canakaris. See for example Grimmett v. Grimmett, 425 So.2d 545 (Fla. 4th DCA 1982), and Tronconi v. Tronconi, 425 So.2d 547 (Fla. 4th DCA 1982).
In applying the discretionary standard of review the test of correctness is also found in Canakaris, quoting from Delno v. Market Street Railway, 124 F.2d 965, 967 (9th Cir.1942):
Discretion, in this sense, is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.
382 So.2d at 1203.
In our view the share allotted to Maureen McSwigan from the partnership assets accumulated over twenty years is "a pittance." We further find that reasonable men could not disagree as to this characterization. Accordingly, if our analysis were to conclude with the cases reviewed to this point, reversal would seem inevitable and in our view absolutely justified on the facts and the law.
We must, however, go one step further and mention two recent cases which cast some doubt on what we do here. The nature of our doubts is expressed in both the majority and dissenting opinions in Marcoux v. Marcoux, 445 So.2d 711 (Fla. 4th DCA 1984) and Marshall v. Marshall, 445 So.2d 706 (Fla. 4th DCA 1984). Those doubts are created by the cases of Conner v. Conner, 439 So.2d 887 (Fla. 1983) and Kuvin v. Kuvin, 442 So.2d 203 (Fla. 1983).
In the Kuvin case the supreme court quashed the decision of the district court of appeal which reversed the final judgment on the basis that the wife was entitled to permanent rather than rehabilitative alimony. The supreme court reminded us that it is within the discretion of the trial court whether to award permanent or rehabilitative alimony. In finding no abuse, the supreme court pointed out that reversal of the rehabilitative alimony award "appears to elevate to a rule of law the proposition that a rehabilitable wife who is awarded custody of minor children and who desires to forego rehabilitation and remain at home has a right to do so if her former husband can afford to support her." Id. at 204-05. Further, said the supreme court, "the sole test is not the husband's ability but also the needs of the wife and the best interests of the parties." 442 So.2d at 205. We take this to mean that the mere desire of the wife to remain a homemaker, coupled with the ability of the husband to accommodate that desire, does not necessarily control. This is consistent with the rule that the trial court takes into account all facts and circumstances, the criteria referred to in Canakaris, and then attempts to make an award that is consistent with the best interests of both parties.
We have no hesitancy in distinguishing McSwigan from Kuvin. We do not hold here that rehabilitative alimony is unsuitable or inadequate. We hold that Maureen McSwigan did not receive upon termination a fair share of the assets of the marital partnership. In our view Kuvin does not overlap an inquiry of this nature.
In Conner the trial court awarded the wife lump-sum, periodic and rehabilitative alimony. The district court briefly summarized the evidence and determined that the amounts were insufficient, concluding that the wife had been shortchanged. The supreme court, approving in part and quashing in part the opinion of the district court, held that:
The determination that a party has been "short-changed" is an issue of fact and not one of law, and in making that *288 determination on the facts before it in the instant case, the district court exceeded the scope of appellate review.
Conner, 439 So.2d at 887.
Of crucial importance in placing the Conner case in proper perspective, as we view it, is the fact that it was only the amount of these awards which troubled the district court. The amount of an alimony award is peculiarly within the discretion of the trial court. Castor v. Castor, 316 So.2d 588, 589 (Fla. 1st DCA 1975). Thus, when the appellate court characterizes a specific award as having shortchanged the wife where the sole question concerns the amount, what is dealt with is a question of fact where the trial court has the very broadest discretion. (We are nonetheless inclined toward the view that an amount may, under extreme circumstances, constitute an abuse of discretion. If not, then the right to appeal in civil actions has been seriously eroded.)
A reviewing court is not preempted from finding that one spouse has been shortchanged where the trial court has applied an incorrect rule of law. Canakaris, 382 So.2d at 1202. The foregoing analysis compels the same conclusion where the trial court has refused to make an award of alimony where such an award is mandated either in the form of support based upon need, ability to pay, and the best interests of the parties, or as an element of equitable distribution where the spouse is entitled to a share of the assets of the marital partnership upon termination.
It therefore seems clear to us that McSwigan does not come within the prohibition of Conner despite our finding that the wife has been "shortchanged."
We recognize that if our analysis of the holdings in Conner and Kuvin is incorrect, then we have created a conflict with those cases. This is obviously of great public interest and we therefore certify the following questions to the supreme court:
1. Whether appellate review of final judgments in dissolution of marriage proceedings as defined and explained in Canakaris, 382 So.2d 1197 (Fla. 1980), has been further restricted by the holdings in Conner, 439 So.2d 887 (Fla. 1983) and Kuvin, 442 So.2d 203 (Fla. 1983)?
2. Whether we have correctly interpreted and applied the holdings of Kuvin and Conner in this case?
We therefore reverse the final judgment and remand to the trial court for a determination of the amount and nature of the wife's entitlement based upon her contribution to the marital partnership.
REVERSED and REMANDED.
LETTS and BERANEK, JJ., concur.