471 So.2d 1358 (1985)
Geraldine G. CARROLL, Appellant,
v.
Paul J. CARROLL, Appellee.
No. 84-1177.
District Court of Appeal of Florida, Third District.
July 2, 1985.
*1359 Ira L. Dubitsky; Greene & Cooper and Joan M. Bolotin, Miami, for appellant.
Pyszka & Kessler; Mitchell M. Goldman; Daniels & Hicks and Sam Daniels and Patrice A. Talisman, Miami, for appellee.
Before HENDRY, DANIEL S. PEARSON and JORGENSON, JJ.
PER CURIAM.
This is an appeal from a final judgment of dissolution. The wife argues that she has been "shortchanged" within the meaning of Colucci v. Colucci, 392 So.2d 577, 577 (Fla. 3d DCA 1980), and Canakaris v. Canakaris, 382 So.2d 1197, 1204 (Fla. 1980). We agree and, as a consequence, reverse.
Unlike most dissolution cases this court receives, the instant case is one in which the parties can well afford the economic consequences of dissolution. When the parties were married in 1960, the husband was a law student, and the wife worked as a dental hygienist to help support them. Since 1969 the husband has fully supported the family.[1] The husband is now a successful attorney: indeed, a multi-millionaire with a six-figure income. The parties have two children, an adult daughter and a minor son, now 14.
The trial court's order, in addition to determining parental rights and child support, which the parties do not contest, awarded the wife "rehabilitative periodic lump sum alimony" of $5,000 per month for 48 months ($60,000 a year);[2] and a lump sum alimony award which includes $250,000 (either in cash or securities or other liquid assets selected by the husband) to be paid on a date certain, her own interest in their Colorado condominium, his interest in the marital home,[3] unencumbered (he is to either pay off the mortgage or to continue making the payments until she sells the *1360 home), and in the furnishings therein and a car. Further, pursuant to the order, each party is to retain his or her own remaining real and personal property and pay his or her own attorney's fees; the husband is to pay all reasonable costs incurred in the dissolution action.[4]

PERMANENT ALIMONY
The trial court, in its award of "Rehabilitative Periodic Lump Sum Alimony" (also described therein as "periodic rehabilitative lump sum alimony") created a hybrid animal, where no such domestic creature existed before. It is not probable that a 46-year-old woman who never earned more than $6,000 a year and whose ability to resume employment as a dental hygienist is problematic due to her physical problems could ever hope to earn enough, even through rehabilitation, to support herself in a lifestyle anywhere near the standard of living that was established during this marriage. See, e.g., Forster v. Forster, 436 So.2d 966 (Fla. 3d DCA), rev. dismissed, 443 So.2d 979 (Fla. 1983). The record establishes, and the husband admits, that the wife's personal expenses amounted to almost $75,000 in 1983. Permanent rather than rehabilitative alimony is indicated based upon the circumstances in this case and should be awarded to the wife in addition to the lump sum alimony. See Cutler v. Cutler, 421 So.2d 585, 586 (Fla. 3d DCA 1982). The trial court erred in not awarding the wife permanent periodic alimony of $60,000 net per year and not requiring the husband to be responsible for the taxes. See Colucci; see also Walter v. Walter, 464 So.2d 538 (Fla. 1985) (reinstating permanent alimony which met circumstances and needs of parties consistent with husband's ability to maintain established standard of living); Gallant v. Gallant, 468 So.2d 479 (Fla. 2d DCA 1985) (permanent alimony should be commensurate with wife's needs and husband's ability to pay). In recognition of the present needs of the wife, we hereby vacate the rehabilitative alimony award and, on remand, direct that it be made a permanent periodic alimony award.

LUMP SUM ALIMONY
Both periodic and lump sum alimony may be awarded in the discretion of the trial court. Grobard v. Grobard, 382 So.2d 117 (Fla. 3d DCA 1980). An award of lump sum alimony is appropriate in this case. Although a justification for the lump sum alimony award is not set out in the trial court's order, it is reflected in the record and the husband is financially able to pay. See Robinson v. Robinson, 403 So.2d 1306 (Fla. 1981) (on rehearing) (where there is some justification for award and paying spouse can pay without endangering his or her economic status lump sum alimony award to insure equitable distribution of marital assets is within trial court's discretion).
The trial court properly awarded the wife as lump sum alimony the marital home and furnishings, see Clarke v. Clarke, 443 So.2d 486 (Fla. 2d DCA 1984); Besley v. Besley, 437 So.2d 247 (Fla. 3d DCA 1983), rev. denied, 450 So.2d 485 (Fla. 1984); Fell v. Fell, 421 So.2d 790 (Fla. 1st DCA 1982); Locke v. Locke, 413 So.2d 431 (Fla. 3d DCA 1982), the car and a substantial cash award. We find, nonetheless, that the court erred in the distribution of property between the parties for the following reasons.
First, an award will not be upheld unless the judgment is supported by competent evidence, see Shaw v. Shaw, 334 So.2d 13, 16 (Fla. 1976), and, in this case, that test is not met. Where distribution of *1361 marital property is at issue, it is essential that the valuations are properly made. Here, they were not. The value of the assets of the parties, as evidenced in their financial statements, was hotly contested and, insofar as this court can determine, is still unresolved.[5] The wife claims that her husband's "ledger," which reflects the valuations, failed to include assets of almost three million dollars. Assets which are acquired during marriage are to be deemed as jointly owned assets and are to be equitably distributed.[6] In the husband's presentation of the wife's post-dissolution assets, he erroneously includes as property the sum of the wife's hybrid rehabilitative alimony award. See Cullen v. Cullen, 413 So.2d 1196, 1198 (Fla. 1st DCA 1982).
Second, the wife is entitled to receive her equitable share of the properly valued marital assets; otherwise, she will be shortchanged. See Marcoux v. Marcoux, 464 So.2d 542 (Fla. 1985); Canakaris; Besley, 437 So.2d at 247 n. 1. There need not be equal division, see DeCenzo v. DeCenzo, 433 So.2d 1316 (Fla. 3d DCA 1983) (trial court's division of assets proper, though not equal); Tronconi v. Tronconi, 425 So.2d 547 (Fla. 4th DCA 1982), aff'd, 466 So.2d 203 (Fla. 1985), although that is a good starting point, see Mahaffey v. Mahaffey, 401 So.2d 1372 (Fla. 5th DCA 1981).
Based on the foregoing analysis, we conclude that the distribution of the marital assets between the husband and the wife was not made equitably. The trial court must reconsider the lump sum alimony award so as to achieve that result, see Tronconi, 425 So.2d 547; see also DeCenzo. We, therefore, vacate those portions of the trial court's order dealing with the property distribution and remand with directions to establish the value of the assets (including those assets previously excluded). Thereafter, the court is to distribute the assets equitably in accordance with the views expressed herein and with the principles established in Canakaris. See, e.g., Tronconi v. Tronconi, 466 So.2d 203 (Fla. 1985); Berger v. Berger, 464 So.2d 649 (Fla. 4th DCA 1985); McSwigan v. McSwigan, 450 So.2d 284 (Fla. 4th DCA 1984), approved, 468 So.2d 232 (Fla. 1985); Grimmett v. Grimmett, 425 So.2d 545, 546 (Fla. 4th DCA 1982).

ATTORNEY'S FEES
We vacate that part of the order requiring the wife to pay her own attorney's fees. In light of our remand to distribute equitably the marital assets, the trial court must consider anew the wife's entitlement to attorney's fees. Here, too, the principles of Canakaris shall provide guidance. See also Kane v. Kane, 469 So.2d 933 (Fla. 3d DCA 1985) (husband should pay wife's attorney's fees in view of his superior financial position), and cases cited therein; Angelides v. Angelides, 466 So.2d 1198 (Fla. 3d DCA 1985) (trial court grant of attorney's fees to wife proper given husband's superior financial ability to secure and pay counsel); DiPrima v. DiPrima, 435 So.2d 876 (Fla. 5th DCA 1983) (error not to award wife full payment of attorney's fees in view of size of parties' resulting estates and husband's income potential *1362 even though under provisions of judgment wife can live in substantially the same manner as during the marriage), rev. denied, 447 So.2d 886 (Fla. 1984); Locke (wife entitled to award of attorney's fees where husband has superior financial ability and wife has almost no ability to generate funds).
Affirmed in part; vacated in part; and remanded with directions.
NOTES
[1] The wife worked intermittently from 1969 until 1978, earning $2,000 to $3,000 a year which went towards her personal expenses.
[2] The court awarded an additional rehabilitative alimony payment of $1 per month for that period in order to retain jurisdiction if facts warranted a change.
[3] The parties' appraisals of the marital home differed by $100,000. The trial judge estimated the value as "somewhere ... in the nature of 6 to 800,000 dollars."
[4] The concern as to whether the "Canakaris-Conner-Kuvin" trilogy, see Kuvin v. Kuvin, 442 So.2d 203 (Fla. 1983); Conner v. Conner, 439 So.2d 887 (Fla. 1983); Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), limits the jurisdiction of the district courts by making the judgments of trial judges all but irreversible in domestic cases, as expressed by Judge Letts (whose views we shared, see Farkas v. Farkas, 452 So.2d 963, 964 n. 1 (Fla. 3d DCA 1984)), in Marshall v. Marshall, 445 So.2d 706, 707 (Fla. 4th DCA 1984) (Letts, J., specially concurring), and Marcoux v. Marcoux, 445 So.2d 711, 713 (Fla. 4th DCA 1984) (Letts, J., dissenting in part), has been resolved by the supreme court in its holding in Marcoux v. Marcoux, 464 So.2d 542, 543 (Fla. 1985), that nothing in Conner or Kuvin limits the Canakaris scope of appellate review.
[5] In this case, the husband's statement of financial condition, which he submitted, was prepared by an accountant. It did not include a valuation of the husband's 65% interest in the law firm of which he is a member nor his several tax shelters (his argument that these interests cannot be valued is disingenuous). Significantly, the statement was accompanied by a disclaimer letter from the accounting firm in which the firm explained that the statement was merely a "compilation" presenting data that "is the representation of the individual" but has not been audited or reviewed. Therefore, the accountants could not express an opinion or give assurance regarding accuracy. Further, they were "aware of certain departures from generally accepted accounting principles" and that "users of this financial statement ... might reach different conclusions ... if they had access to a revised statement of financial condition prepared in conformity with generally accepted accounting principles." Not only do the accountants hesitate to guarantee the accuracy of the husband's financial information, but we note that the husband's financial statement is not sworn to and is not in the form prescribed by Florida Rule of Civil Procedure 1.611(a).
[6] There is no suggestion here that these assets, even those which may have been valued inappropriately, are anything other than assets acquired during the marriage.