MONARCHCARE, INC., Appellant,

v.

GUARDIANSHIP OF Sanford H. BLOCK and Sharon Fein, Co–Guardian of the Property of Sanford Block, and Sanford H. Block, Appellees.

No. 4D15–4037.

District Court of Appeal of Florida, Fourth District.

Aug. 3, 2016.

Tara S. Pellegrino and Holly O'Neill of Broad and Cassel, West Palm Beach, for appellant.

Andrew K. Fein of Minerley Fein, P.A., Boca Raton, for appellee Sanford H. Block.

Edward A. Shipe, Boca Raton, for appellee Sharon Fein.

WARNER, J.

Appellant, MonarchCare, Inc., as co-guardian of ward Sanford H. Block, appeals a trial court order authorizing payment of the guardian's fee and expenses. In authorizing fees, the trial court reduced the hourly rate previously allowed to the guardian and reduced the number of hours. MonarchCare contends that the court erred because it based the reduced rate on a prior judge's prospective announcement that MonarchCare's fees would be reduced. While we agree with MonarchCare that the prior judge's prospective order was not authorized, the judge who decided the fees made a thorough review of the services. Nevertheless, the hourly rate ultimately adopted by the trial court is not supported by the evidence. We thus reverse and remand for reconsideration of the fee.

In 2012, appellee Sharon Fein and appellant MonarchCare were appointed as co-guardians of appellee Mr. Block, following Mr. Block being adjudicated partially incapacitated.[1] From 2012 to 2015, MonarchCare was generally awarded fees at a rate of $95 per hour, although it sometimes billed at a rate of $50 an hour or no charge for small amounts of time within each billing cycle. Fein generally billed and the court authorized, $45 or $50 per hour for her time. From its appointment in October 2012 through November 2014, MonarchCare received a total of $21,567.97. Fein received considerably less.

In April of 2015, the presiding judge, Judge Gillen, called a hearing to review the guardian fees, because, commendably, the court was concerned about the amount of fees generated on what appeared to be a routine guardianship. The ward's attorney explained that the use of co-guardians, which was a concession to the ward's family, was causing the high fees. The attorney was himself concerned about the amount of fees, as the ward was healthy and the fees would eat away at his income and assets over time. He also complained that MonarchCare was billing at its higher rate for routine administrative tasks that Fein, as co-guardian, could perform at her lower rate. MonarchCare responded that under its management, the ward's assets were actually increasing, not decreasing. The ward's attorney suggested that the billing rates for both co-guardians should be the same. After reviewing prior awards, the court granted the pending fee request at the $95 rate. In the order, however, it prospectively capped both Fein's and MonarchCare's rate at $45 per hour, although at the hearing, Judge Gillen expressed some misgiving as to his authority to prospectively reduce the rate.

Subsequently, MonarchCare submitted another request for guardian fees for 16.3

---

1. Sharon Fein, together with the ward's sister-in-law, had been designated as co-guardians by the ward prior to his incapacity. It is unclear from the record why MonarchCare was appointed instead of the sister-in law, although it appears to have been the result of some compromise.

hours at $95 per hour. This request was heard by a successor trial judge, Judge Ticktin. An evidentiary hearing was held. At first, Judge Ticktin questioned why she should not simply rely on the prior prospective order of Judge Gillen, setting an hourly rate at $45 per hour. MonarchCare's attorney informed Judge Ticktin that the prior hearing was not an evidentiary one and that the court should not set an hourly rate without knowing what services were rendered. The court then allowed testimony to be presented.

The executive director of MonarchCare testified that the prevailing rate for professional guardians in Palm Beach County is $95, although it is lower in Broward and Miami–Dade Counties. She noted that the services performed as reflected on this latest bill were similar to the services for which a $95 per hour rate had been allowed by prior orders. She testified that by providing services to this ward, it precluded MonarchCare from taking on other work. She did admit that of the 16.3 hours requested, 12.3 hours had been billed by employees who were not professional guardians. However, they had been working at the direction of a professional guardian.

After presentation of the witness, the ward's attorney argued to Judge Ticktin that the judge should use the hourly rate previously set by Judge Gillen and that the hours expended by non-professionals should not be compensated at the same rate as those of the professional guardian.

Judge Ticktin then ruled. First, she acknowledged Judge Gillen's order setting the fees prospectively but admitted that, not having a transcript of the proceedings, she didn't know what to make of the order. Judge Ticktin found that, pursuant to section 744.108, Florida Statutes (2015), there was no evidence suggesting that the case merited more than $90 per hour, as ruled by Judge Gillen, despite the fact that there were co-guardians. She also found that there had been "no evidence regarding the novelty and difficulty of the questions involved, . . . no evidence submitted that the . . . acceptance of the particular employment will preclude other employment of the person." Judge Ticktin found that a total aggregate fee of $95 fell within the customary range. She noted that no evidence had been presented on the nature and value of Mr. Block's property, the results obtained, any time limits imposed by the circumstances, or the nature and length of the relationship. *Id.* Based on this, Judge Ticktin stated that she would uphold Judge Gillen's prior ruling. Judge Ticktin signed an order authorizing payment of 16.3 hours at $45 per hour. MonarchCare appeals that ruling.

■ "[W]hen it is clear that the probate court has considered the statutory factors and has based its ruling on competent, substantial evidence in the record," the amount of guardian's fees awarded will not be disturbed unless "the probate court's ruling is arbitrary, fanciful, or unreasonable and thus an abuse of discretion." *In re Guardianship of Shell,* 978 So.2d 885, 889 (Fla. 2d DCA 2008), (citing *Canakaris v. Canakaris,* 382 So.2d 1197, 1203 (Fla. 1980)). "However, to the extent the trial court's orders were based on conclusions of law, [this court] appl[ies] de novo review." *Bluth v. Blake,* 128 So.3d 242, 245 (Fla. 4th DCA 2013).

■ MonarchCare argues that the trial court acted arbitrarily and capriciously in reducing its hourly rate from $95 to $45 per hour based solely on the aggregate cost of care, ignoring statutory guidelines and presumptions of validity. "A guardian, or an attorney who has rendered services to the ward or to the guardian on the ward's behalf, is entitled to a reasonable fee for services rendered and reimburse-

ment for costs incurred on behalf of the ward." § 744.108(1), Fla. Stat. (2015).

[T]he guardian has the burden to establish through appropriate proof that the services claimed were actually performed and that the fees claimed for those services are reasonable. Based on that proof, the probate court has the discretion to determine the amount of the fees to which the guardian is reasonably entitled.

*Shell,* 978 So.2d at 889 (emphasis omitted) (citations omitted). The court is not "at liberty to award anything more or less than fair and reasonable compensation for the services rendered or monies expended in each individual case[.]" *Id.* at 890 (quoting *Lewis v. Gramil Corp.,* 94 So.2d 174, 176 (Fla.1957)).

■ The court must consider the following factors when determining whether the fee requested by the guardian is reasonable:

(a) The time and labor required;

(b) The novelty and difficulty of the questions involved and the skill required to perform the services properly;

(c) The likelihood that the acceptance of the particular employment will preclude other employment of the person;

(d) The fee customarily charged in the locality for similar services;

(e) The nature and value of the incapacitated person's property, the amount of income earned by the estate, and the responsibilities and potential liabilities assumed by the person;

(f) The results obtained;

(g) The time limits imposed by the circumstances;

(h) The nature and length of the relationship with the incapacitated person; and

(i) The experience, reputation, diligence, and ability of the person performing the service.

§ 744.108(2), Fla. Stat. (2015). Where the trial court has previously approved a guardian's fee based upon a particular rate, this "does not mandate that fees allowed in the future be at the same rate. However, it does create a valid presumption that [that rate] is a reasonable rate for the services provided by this guardian in the absence of valid justification for a different rate." *Schacter v. Guardianship of Schacter,* 756 So.2d 1075, 1076 (Fla. 4th DCA 2000).

In *Schacter,* unlike this case, the court reduced the hourly rate without any hearing whatsoever. Here, there were two hearings, one with evidence and one without.

■ In the present case, the trial court had previously found that paying Monarch-Care $95 an hour was reasonable. Nothing in the record shows the basis for this finding, as there apparently were no previous hearings on the appropriate rates. MonarchCare contends that the court did not overcome the presumption that the $95 hourly rate was reasonable. We disagree. First, we think that a presumption, if any, in this case, must be considered extremely weak as there had been no prior hearings before the court to establish the reasonableness of the hourly rate. Second, in addition to Judge Ticktin's review of the statutory factors, the evidence showed that almost all of the hours presented by MonarchCare were performed by non-professionals. We have reviewed the bills and note that most of the time is for perfunctory, secretarial type services. As the ward's attorney stated, there is no reason that the co-guardian should not have performed these services at her lesser rate.

■ We must, however, reverse, as Judge Ticktin appears to have simply ac-

cepted Judge Gillen's prospective limitation of the hourly rate of the professional guardian to $45 per hour when there is no evidence in the record to support this amount. Indeed, the non-professional co-guardian charged $50 per hour. The thinking of both trial judges appears to be that the total hourly rate for both co-guardians would amount to approximately the reasonable hourly rate for a professional guardian. However, that fails to take into account the varied services that may be performed and apparently assumes that the co-guardians are simply duplicating each other's services. Hopefully, the co-guardians are working together so as not to do so.[2]

We agree with MonarchCare that the court should not set a prospective hourly rate without consideration of the services to be performed and the reasonable hourly rate for those services. In this case, however, the evidence presented shows that most of the fees should be charged at a reduced rate. This is no different than an attorney's fees award, where time spent by associates, paralegals and other support personnel cannot be billed at the same rate as a lead lawyer.

While we conclude that the court did not abuse its discretion in finding a valid justification for a different rate, the reduction of the rate to $45 per hour is not supported by this record. We thus reverse and remand for the trial court to redetermine the reasonable hourly rate for the services performed.

*Reversed and remanded.*

TAYLOR and GERBER, JJ., concur.

[2]. If services are being duplicated, then the court should not authorize double expenditures.