363 So.2d 844 (1978)
William R. BENDER, Appellant,
v.
Annette Harlene Vance BENDER, Appellee.
No. II-184.
District Court of Appeal of Florida, First District.
October 16, 1978.
A.G. Condon, Jr., of Holsberry, Emmanuel, Sheppard & Condon, Pensacola, for appellant.
James M. Barton, II, and David H. Levin of Levin, Warfield, Middlebrooks, Mabie, Rosenbloum & Magie, Pensacola, for appellee.
BOOTH, Judge.
This cause is before us on appeal from the order of the Circuit Court, Escambia County, dissolving the bonds of matrimony of the parties and awarding appellee, the former wife, custody of the two minor children of the parties, alimony and child support. Appellant contends that the award of alimony and child support is excessive in amount and that the trial court erred in awarding permanent alimony.
*845 On consideration of the record, briefs and argument of counsel, we find that the trial court did not err in the award of $2,500 per month permanent alimony to appellee, and $400 per child per month in child support. The basis for the award is stated in the trial court's "Letter of Decision," in pertinent part as follows:
"This case requires alimony from the husband to the wife. The question is, should it be permanent or rehabilitative, and in either case, how much?
The vast majority of dissolution cases before this court neither require alimony nor seek it. The next largest number of cases seek alimony. However, there is not enough money to meet the actual needs of the recipient in these cases. Thus, the court must compromise between the needs of the recipient and the ability of the responding party to meet those needs. The necessary compromise leaves no one satisfied with the award, least of all the court.
Fortunately, in this case, the petitioner husband is more than able to respond to the needs of the wife and two infant children without causing hardship to him. Whatever the final award should be, the petitioner husband will be able to meet his personal and professional needs with a goodly sum left over for him with which to build his estate.
While this marriage was contracted only a short time ago, just six years on May 29, the consequences of the union will last considerably longer. The youngest child was only two and a half years old when the suit was filed in January of this year. The parents will have the legal responsibility for his welfare for at least fifteen and a half years in the future, barring some untoward event.
At a time when the petitioner husband earned considerably less than he does now, he decided, and his wife concurred, that she would remain in the home and be a full time housewife, with all that that implies. When the children were born she was a full time mother. The family could afford such a decision.
It is true, as the court recollects, the respondent wife did work as a `Kelly Girl' for about a year prior to her marriage to the petitioner. Before that, she was trained as an actress, appearing in one `Dragnet' series or episode from which she enjoyed some residual payments of $145.00 over the past ten years or so. The job market for long unemployed actresses in West Florida is not good. Certainly, Mrs. Bender could not be expected to move her residence on the off chance she could someday be reemployed as an actress somewhere else if she recaptured her long abandoned acting ability. In any event, there is no testimony to support the petitioner's theory that she could be reemployed as an actress anywhere. The miniscule `residuals' that she received suggests to the court the doctrine, "de minimus non curat lex'.
Can Mrs. Bender return to being a secretary? Or, the question is, should she? It was decided early in the marriage that Mrs. Bender should abandon her skills as a secretary, whatever they were, for there is no testimony of her level of skill, and learn a new job, that of being a full time housewife and mother when the time came. The plan apparently worked well, satisfying both parties until the petitioner filed his suit to dissolve the marriage. A suit to end the marriage doesn't automatically end the responsibilities each has to the other and the offspring of the union.
The essential plan of the parties concerning their children should continue regardless of their marital status, if such is possible. It was decided by both parties, in better times, that the wife should be a full time mother; the husband has the means to see that objective fulfilled. So it shall be.
By the time the youngest child reaches an age at which the respondent wife might attempt to return to the job market, be it secretarial or as an actress, she will be close to fifty years old, a time in one's life when it is difficult to enter any job market. The people she would be competing with would have had that additional time *846 and work experience to acquire skills while hers lay dormant. It is too much to expect her to be a full time mother and at the same time keep her secretarial and acting skills, whatever they may be, competitive with others.
To do `equity and justice between the parties' the court will order that alimony be awarded to the respondent wife and that it be permanent in nature.
How much should the alimony be? Based on the petitioner's income statement from the C.P.A. firm who handled his accounts, Respondent's Exhibit No. 1, the petitioner's gross earnings from salary, car allowance, director's fees and dividends was $124,176.00 in 1976. A little more than a $9,000.00 raise from the previous year. In addition, for 1976 the sum of $25,738.00 was set aside for him in a profit sharing and pension plan. The petitioner also owned a share of his professional association's retained earnings of $64,912.00.
Alimony is taxed to the recipient and deductible from the tax return of the `payor'. The court knows full well that the tax expert testimony during the respondent's case could not be exactly accurate, but it was admitted as aid to the court in determining the amount of alimony should that be the court's decision. It is now apparent that such evidence will be helpful to the court in its efforts to balance the equities of how much is needed and how much can be paid.
The wife's financial affidavit says she needs $2,310.00 per month, the husband's shows a need for $2,769.00 per month. According to Mr. Riggs' testimony, in order for the respondent wife to have that much income after taxes, she would have to receive $3,500.00 in monthly alimony. Allowing for some inaccuracies in her needs as expressed in her affidavit and testimony and allowing for a portion of the children's needs necessarily covered in her evidence of $2,310.00 needs, the court will order monthly alimony in the amount of $2,500.00 as permanent alimony to the respondent wife, along with $400.00 per child per month until each child reaches his majority, marries, dies or becomes self-supporting.
The court wants to remind counsel, and to advise them that the court is aware of the rule that a major change in circumstances of either party may subject the award of alimony and child support to modification as the circumstances warrant."
Accordingly, the judgment below is affirmed and motion for attorneys' fees is GRANTED, the amount to be determined by the trial court in accordance with Dresser v. Dresser, 350 So.2d 1152 (Fla. 1st DCA 1977).
SMITH, Acting, C.J., and MELVIN, J., concur.