407 So.2d 627 (1981)
Manuel HURTADO, Appellant,
v.
Rose-Jean HURTADO, Appellee.
No. 80-1301.
District Court of Appeal of Florida, Fourth District.
November 25, 1981.
*628 Richard G. Lubin and Mary Jane Merola of Lubin & Hamill, P.A., West Palm Beach, for appellant.
Edna L. Caruso, and Montgomery, Lytal, Reiter, Denney & Searcy, P.A., West Palm Beach, for appellee.
GLICKSTEIN, Judge.
This is an appeal of a final judgment of dissolution of marriage wherein the trial court awarded appellee custody of the parties' two children, the marital home as lump sum alimony, exclusive use and possession of the furniture and furnishings in the marital home, child support of $200 per month per child, plus all medical, dental, orthodontic and prescription medication expenses incurred for the children, the parties' 1977 Lincoln, permanent alimony of $1600 per month, and reasonable attorney's fees as yet undetermined. Appellant was awarded the parties' two townhouses, boat and trailer. The trial court further ordered that appellant was to maintain medical insurance and life insurance during the children's minority; that the parties were to divide equally their IBM stock, savings certificates and municipal bonds; and that appellant was to pay appellee $4,400, which sum she advanced to pay the parties' joint tax obligation. We affirm.
At the time of the final hearing in May, 1980, the parties had been married for 12 1/2 years. Appellant, then 46, was a physician; appellee, then 33, was a housewife. The two children were then 10 and 8 years of age. The marriage was broken by appellant's affair with a younger woman during which the parties reconciled three different times. At the time of the final hearing, appellant was living with his girl friend and paying the rent on the apartment they shared.
Appellee's financial affidavit reflects that she has expenses of $2,416 per month after elimination therefrom of any expenses for the children and the townhouses awarded to the husband. She further testified it was necessary to withdraw from $300 to $500 monthly from her savings account or to borrow from her father in order to meet her expenses during the period when appellant was paying $1800 per month for temporary alimony and child support. Appellee was accustomed to a comfortable standard of living. The parties resided in a three bedroom home with pool situated in a nice neighborhood on a canal. They had purchased five new automobiles during their marriage and had traveled to Mexico and Peru as well as California and other states. Appellee was not restricted in her use of credit cards or in purchases of furnishings for the home and of clothes for herself.
Appellant is an emergency room physician and also medical director of a hospital in Palm Beach County. His P.A., of which he is the sole stockholder, grossed $65,623 for the year ending August 31, 1979 and expected an increase of approximately $3,000 annually. Appellant was paid $42,600 in salary during the 1979 fiscal year and an additional $10,650, or 25% of his salary, was contributed to his pension plan. In the fiscal year 1980 he was receiving a salary of $45,000 and $11,250 was contributed to his pension plan. In addition he received interest income.
Appellant first contends that the court erred in awarding alimony of $1600 per month and child support of $200 per month per child. After considering the needs of the wife and the ability of the husband to provide for them, see Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), we hold that the trial court did not abuse its discretion in its determination of the amount of alimony and child support.
Appellant next urges that appellee was not entitled to permanent alimony because *629 she has maintained a current nursing license by successfully completing the required continuing education courses, and has continued her malpractice insurance. Additionally, he relies on testimony that nursing positions were open with flexible hours that would provide appellee with support and not detract from her duties and responsibilities to the children. The issue is whether the trial court abused its discretion in awarding permanent alimony instead of rehabilitative alimony. We find no abuse.
With the birth of their first child, it was appellant's wish that appellee stay home and raise the children as the appellant had been raised. Appellee agreed and testified that at no time during the marriage did appellant suggest that she go to work. Appellee said at final hearing that she did not wish to go to work but desired to continue to care for the children as she had done since their birth. During the marriage the only assistance appellee had was a maid one-half day a week. For the past 10 years she cared for the daily needs and activities of the children who required a full time mother.
There is well reasoned authority which supports appellee's position. In Walton v. Walton, 354 So.2d 464, 466-467 (Fla. 1st DCA 1978), the court said:
Where the custodial parent of a child is willing to remain in the home and make a home for children of tender years, extending by precept and example the guidance so vitally needed in the early and teen years of their lives, the court is justified in awarding to such parent, permanent alimony to be paid by the other parent based upon need and ability to pay. What we write here is applicable equally to a mother and wife or to a father and husband, where he or she has been awarded the custody of the children, has a need for financial assistance, and the person not having such custody is financially able to pay reasonable alimony as well as child support. Such allowance of permanent alimony may, in such circumstances as here presented, be favorably considered by the trial court. We refer to the opinion of this Court in Ruhnau v. Ruhnau, 299 So.2d 61 (Fla. 1st DCA 1974), wherein we said:
"We also point out that the word `permanent' is not necessarily synonymous with the word `forever'. Change of circumstances, including ability of self-support after children are `grown and gone' clearly justifies, depending upon the circumstances of each case, modification of alimony judgments (Florida Statute 61.14)."
Similarly, in Bender v. Bender, 363 So.2d 844, 845 (Fla. 1st DCA 1978), the appellate court approved the following determination by the trial court:
The essential plan of the parties concerning their children should continue regardless of their marital status, if such is possible. It was decided by both parties, in better times, that the wife should be a full time mother; the husband has the means to see that objective fulfilled. So it shall be.
See also Hinebaugh v. Hinebaugh, 403 So.2d 451 (Fla. 5th DCA 1981).
Appellant wishes us to compel appellee to return to work and abandon her role as mother and homemaker in order to lighten his financial burden, enabling him to do other things. Having abandoned the family circle he created in order to be the companion of another woman, thus creating financial difficulties for appellee as well as himself, appellant should find it difficult to locate precedential support. Such inclination does not exist in this court. See Williamson v. Williamson, 367 So.2d 1016 (Fla. 1979).
Nevertheless, it is not our intention, by approving the award of permanent alimony, to turn a young, healthy, employable woman into an "alimony drone" for the balance of her unmarried life. When the children reach majority, or perhaps prior thereto, a modification may be in order. However, we do not speculate at this time as to the wife's future needs nor the husband's ability to provide for them.
*630 Appellant's third point is that although he had no objection to appellee's use and possession of the marital home during the children's minority, it was error to award her the home as lump sum alimony. By virtue of the equitable distribution in the final judgment, including the award of the parties' townhouses to appellant, the parties' respective net assets appear to be as follows:

 Appellant
 Equity in townhouses $22,800
 Checking account 5,300
 Certificates of deposit 15,000
 IRA account* 2,200
 Life insurance deferment plan* 7,700
 PA pension plan* 40,000
 Equity in 1979 Trans Am 3,800
 Boat and trailer 500
 One-half of certificates of
 deposit 7,500
 One-half of municipal bonds 19,500
 One-half of IBM stock 4,000
 ________
 Total $128,300
 In addition, appellant is sole stockholder
 of PA
 Appellee
 Equity in marital home $61,000
 1977 Lincoln 4,000
 Certificates of deposit 15,000
 Clothing and jewelry 1,500
 Savings and checking accounts 200
 Repayment from appellant of
 taxes paid 4,400
 One-half of certificates of
 deposit 7,500
 One-half of municipal bonds 19,500
 One-half of IBM stock 4,000
 ________
 Total $117,100
 In addition, appellee has exclusive use of
 furniture and furnishings ($8,000).
* Tax deferred items

In Canakaris v. Canakaris, supra at 1201, the court said:
In granting lump sum alimony, the trial court should be guided by all relevant circumstances to ensure "equity and justice between the parties."... A judge may award lump sum alimony to ensure an equitable distribution of property acquired during the marriage, provided the evidence reflects (1) a justification for such lump sum payment and (2) financial ability of the other spouse to make such payment without substantially endangering his or her economic status. Brown v. Brown [, 300 So.2d 719 (Fla. 1st DCA 1974)] In our opinion, the award of the marital home as lump sum alimony may be coupled with other lump sum alimony or permanent periodic alimony awards if justified by the evidence.
While the award here of the marital home as lump sum alimony coupled with the remainder of the award of permanent alimony and child support reaches the outer limits of the trial court's discretion, it did not exceed those limits.
Appellant's final point is that the trial court erred in awarding attorney's fees with the amount to be determined later. Since no award has actually been entered, the issue is not ripe for appellate review. Vanderslice v. Vanderslice, 396 So.2d 1185, 1187 (Fla.4th DCA 1981).
AFFIRMED.
ANSTEAD and HERSEY, JJ., concur.