456 So.2d 1214 (1984)
Patricia P. DIFFENDERFER, Appellant,
v.
Richard L. DIFFENDERFER, Appellee.
No. AV-79.
District Court of Appeal of Florida, First District.
September 17, 1984.
Rehearing Denied November 1, 1984.
Cynthia S. Tunnicliff, of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee, for appellant.
Keith J. Kinderman, Tallahassee, for appellee.
SHIVERS, Judge.
In this dissolution of marriage, the wife appeals the granting of various awards to the husband, and the failure to grant certain awards to her. We affirm awards to the husband of half the parties' Eastman Kodak stock and half the wife's savings *1215 account, and do not disagree with the trial court's directive that the wife pay her own attorney's fees and costs. We remand for reconsideration the failure to award the wife permanent periodic alimony, the award to the wife of rehabilitative alimony, and the award to the husband of the Alligator Point property.
The parties involved in this appeal were married in 1953, with four children born of this marriage, none now minors. Both the husband, now 54, and the wife, now 52, worked throughout the marriage at jobs outside the home and continue to do so. The husband works as a federal engineer, as he has done for the past thirty years, now earning a salary of $44,000 a year. The wife works as a full time registered nurse earning $23,000 a year, although she worked only part-time during the marriage earning half this salary. In addition, the husband is entitled to retirement benefits pursuant to a federal retirement plan. At trial, evidence was introduced that, assuming the husband retired in February of 1984, and further assuming the husband lives to his normal life expectancy of seventy-six years of age, the present value of the husband's retirement benefits is $297,000. The husband testified that he had paid in approximately $44,000 during the course of the marriage towards this retirement plan.
The husband is in good health. The wife's health is in dispute. Nevertheless, it is undisputed that the wife has varicose-vein problems in her legs and that the wife has had the pectoral muscle under her left arm removed as a consequence of cancer surgery.
The contribution of each of the parties is also in dispute. Our review persuades us that the husband has contributed at least his fair share to the marital relationship. This determination seems especially true while the husband attended engineering school, since both parties agree that then the husband went to school full time, worked part-time, and performed half the household chores. Moreover, the husband testified that he continued to perform at least half the household chores throughout the marriage and that he contributed more than the wife in the raising of the parties' children. This testimony of the husband does not seem unreasonable in view of the wife's problem of consumption of alcoholic beverages to excess beginning approximately ten years before the parties' separation in 1981. The extent of this problem is disputed.
During the marriage, the parties maintained a joint savings account. When the husband threatened to leave his wife, the wife systematically withdrew, without her husband's consent, sums totalling approximately $10,000 from this account. The wife used these funds for her personal expenses. During the parties' marriage, the wife's mother gave to the husband and wife 22 shares of Eastman Kodak stock which is titled in the parties' joint names.
The trial court directed the wife to pay the husband $5,000, representing half of the funds withdrawn by the wife from this savings account, and directed that the wife transfer to the husband half of the Eastman Kodak stock. The appellant/wife contends these awards were error. We disagree. See Beaty v. Beaty, 177 So.2d 54 (Fla. 2d DCA 1965) (that court holding that if joint checking accounts were owned by the husband and wife as an estate by the entireties, and if portions thereof were removed by one of the parties for a purpose not consistent with their joint interests, the chancellor could properly require a return of such portion as would do equity); Landay v. Landay, 429 So.2d 1197, 1200 (Fla. 1983) (the Florida Supreme Court stating that in the absence of any claim for special equity on either spouse's part, record title bespeaks an equal division of property, with a tenancy by the entireties automatically becoming a tenancy in common upon divorce).
The parties jointly own two parcels of property with houses thereon. The Tallahassee parcel (marital home) is valued at $119,500 with encumbering mortgages totalling approximately $51,000. The other parcel (the Alligator Point beach house) is valued at $60,000 with an encumbering construction *1216 mortgage in the amount of $17,100. Also on the Tallahassee parcel is an apartment that yields $180 monthly rental income.
The husband testified that he built the Alligator Point beach house at nights, weekends, and during his annual leave, with the help of two friends, and that a substantial amount of the work on this house was done subsequent to the parties' separation. The two friends of the husband worked on the beach house in exchange for the husband helping them with their construction projects, and, additionally, the husband paid one friend approximately $500 or $600.
The beach house property was purchased by the husband by borrowing $5,000 in his sole name from a bank. This loan was repaid by the husband to the extent of $3,000 from the husband's half share of the parties' income tax returns, according to the husband, with the remainder apparently being repaid through refinancing of some property. Additionally, the parties secured a loan of $40,000 by mortgaging their marital home and used $10,000 of the proceeds from this loan towards construction costs on the beach house. The parties' family corporation, Derferprice, Inc., apparently repaid this $10,000 loan upon the sale of some of its property.
The wife testified she contributed to the beach house by assisting her husband in picking out some of the materials to decorate the house. The husband testified that, in addition, the wife spent part of a two week vacation working on the beach house.
The trial court awarded to the husband the wife's undivided half interest in the beach house property by virtue of the husband's special equity claim. This award was conditioned that the husband pay off the remaining balance, approximately $38,000, of the mortgage taken on the marital home. Here, since it appears that the husband contributed most, but not all of the consideration, in acquiring the Alligator Point property, we remand for reconsideration of the husband's special equity claim. See Landay v. Landay, 429 So.2d 1197 (Fla. 1983) (the Supreme Court holding that the correct formula to be used in situations where a spouse furnishes some but not all of the consideration for entireties property is: in addition to that spouse's automatic half share, the contributing spouse acquires a special equity in the property equal to half the ratio which that spouse's contribution bears to the entire consideration).
Before turning to the crux of this appeal, that is, the treatment to be given to the husband's interest in his retirement plan, we mention that we are not unmindful of the Supreme Court of Florida's recent pronouncements on the scope of appellate review with respect to dissolution cases. See Kuvin v. Kuvin, 442 So.2d 203 (Fla. 1983); Conner v. Conner, 439 So.2d 887 (Fla. 1983). We agree with the Fourth District Court of Appeal that these cases have created doubts as to the proper scope of appellate review in dissolution cases. See McSwigan v. McSwigan, 450 So.2d 284 (Fla. 4th DCA 1984); Marcoux v. Marcoux, 445 So.2d 711 (Fla. 4th DCA 1984). We therefore join the Fourth District in certifying the following question to the Supreme Court of Florida as one of great public importance:
DO CONNER v. CONNER, AND KUVIN v. KUVIN LIMIT THE SCOPE OF APPELLATE REVIEW ENUNCIATED IN CANAKARIS v. CANAKARIS, 382 So.2d 1197 (Fla. 1980)?
Although not cognizant of Kuvin and Conner, appellant's counsel urged at oral argument that we are not precluded from appellate review of the trial court's judgment since, it is argued, the trial court erred as a matter of law in the treatment of the husband's retirement plan. Specifically, appellant argues that the trial court erred in ruling that only the funds contributed by the husband to the retirement plan during the course of the parties' marriage, i.e., $44,000, should be considered as marital assets. The wife contends that the husband's interest in his retirement plan, reduced to present value after assuming certain contingencies, should have been *1217 treated as a marital asset subject to equitable distribution.
The judgment on review gives no indication as to how the trial judge treated the husband's retirement plan and the record is confusing.[1] Under these circumstances, we agree that appellate review is appropriate, since we cannot say that the trial court's judgment is clearly reasonable and equitable in light of our disposition of how the husband's interest in his retirement plan should be treated.
We find and hold that the husband's interest in his retirement plan should have been considered as a source of payment by the husband in providing for the care and maintenance of the wife. We reject the wife's argument that the husband's retirement plan should have been treated as part of the marital estate, subject to division by the trial court. On this point, we find the reasoning of the Supreme Court of Nebraska in Witcig v. Witcig, 206 Neb. 307, 292 N.W.2d 788 (Neb. 1980) persuasive and quote the following from that decision:
We recognize ... that there are jurisdictions that treat pension interests as marital assets, subject to division by the court. See, for example, Hutchins v. Hutchins, 71 Mich. App. 361, 248 N.W.2d 272 (1976); Pinkowski v. Pinkowski, 67 Wis.2d 176, 226 N.W.2d 518 (1975); Foster & Freed, Spousal Rights in Retirement and Pension Benefits, 16 J. Family L. 187 (1977-78). However, we are not persuaded by these authorities that our presently adopted rule should be changed. See Ellis v. Ellis, 191 Colo. 317, 552 P.2d 506 (1976). Problems inherent in the determination of the value of pension interests and the contingent nature of such interests convince us that the rule we adopted in Howard is correct and cause us to reject the cases holding to the contrary. We, therefore, reaffirm our position that pension interests may be considered on the question of alimony allowances, but not in the determination of the division of marital property.
Id. 292 N.W.2d at 793 (emphasis in original).[2] We disagree with the Witcig decision to the extent that we hold that spousal interests in retirement plans should be considered on the question of an allowance of alimony: the weight to be given such by the trial judge is dependent on the particular facts and circumstances of the case.
Applying our holding to the facts of this case, we find and hold that the trial court erred in not awarding the wife permanent periodic alimony. Here, the husband's earning capacity is assured through his retirement plan  the husband, if he was to retire in 1984, would receive $25,000 his first year. By contrast, the wife's earning capacity is questionable due to her physical problems and her age, while these same factors, among others, establish her need for permanent periodic alimony. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). Accordingly, we find and hold that the trial court erred in not awarding the wife permanent periodic alimony and direct that upon remand the trial judge *1218 award the wife permanent periodic alimony in an amount to be determined by the trial judge after considering the interests enunciated in Kuvin v. Kuvin, supra, at 205. Cf. Marshall v. Marshall, 445 So.2d 706 (Fla. 4th DCA 1984) (that court modifying the trial court's judgment by awarding permanent periodic alimony in lieu of lump sum alimony, after noting that the husband's future security was assured by his retirement pay, while the wife's chances to obtain self-supporting employment appeared more unlikely).
Upon remand, we also direct the trial court to reconsider its award of rehabilitative alimony to the wife. In his judgment, the trial judge awarded the wife rehabilitative alimony in the form of exclusive use and possession of the marital home together with first mortgage payments by the husband, including taxes and insurance, on the marital home (amounting to $261.00 a month), so long as the wife resides there and remains unmarried. The wife is also entitled, as rehabilitative alimony, to receive the rents from the apartment located on the marital home property, approximately $180 a month, for the same period of time. We fail to see, however, the need for rehabilitative alimony in this case, since at the age of 52, with some 30 years of nursing experience, and a present earning capacity of $23,000 a year, it is unlikely that the wife needs to establish a capacity for self-support through the redevelopment of previous skills or provision of the training necessary to develop potential supportive skills. Canakaris, supra, at 1202. Moreover, the wife did not elaborate on a desire to acquire new skills, but instead, the essence of her argument as regards her vocation was that she could only continue working as a nurse part-time, as opposed to the husband's argument that she could work full time. Accordingly, we direct that the trial court reconsider its award of rehabilitative alimony in light of our comments and our reversal of the trial court's failure to award the wife permanent periodic alimony.
Finally, in the judgment on review, the trial judge awarded the wife half of the husband's undivided half interest in the marital home as lump sum alimony. Additionally, the wife was awarded approximately $20,000 in personal property and the husband approximately $1,000 in personal property. Although we do not disturb these awards, the trial judge may wish to reconsider these awards, if he so chooses, since our modifications of the final judgment may in turn impact the trial court's overall distribution plan.
We also do not find error in the trial court's directive that the wife pay her own attorney's fees and costs. However, the trial court should revisit this issue if any redistribution of property should materially change the parties' abilities to bear their own or the other party's attorney's fees. See Conner v. Conner, supra.
Our decision with respect to the treatment to be given the husband's retirement plan is in apparent conflict with decisions from other courts in this state. See Clarke v. Clarke, 443 So.2d 486 (Fla. 2d DCA 1984) (that court stating that it did not find an abuse in the trial court's discretion in considering the husband's pension plan to be a part of the husband's property); see also Hurtado v. Hurtado, 407 So.2d 627 (Fla. 4th DCA 1981). We therefore certify the following question to the Supreme Court of Florida as one of great public importance:
HOW SHOULD A TRIAL JUDGE TREAT A SPOUSE'S ENTITLEMENT TO RETIREMENT BENEFITS IN FASHIONING AN EQUITABLE DISTRIBUTION OF PROPERTY IN DISSOLUTION PROCEEDINGS?
AFFIRMED in part, REVERSED in part, and REMANDED with directions.
BOOTH, J., concurs.
JOANOS, J., dissents with an opinion.
JOANOS, Judge, dissenting.
I respectfully dissent from the majority opinion. The final judgment on appeal should be affirmed.
*1219 The circuit judge in a dissolution proceeding is clothed with a great amount of discretion.
In reviewing a true discretionary act, the appellate court must fully recognize the superior vantage point of the trial judge and should apply the "reasonableness" test to determine whether the trial judge abused his discretion. If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion. The discretionary ruling of the trial judge should be disturbed only when his decision fails to satisfy this test of reasonableness.
Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla. 1980).
What the trial judge did in this situation did not fail to satisfy the test of reasonableness set forth above. Viewed in their totality, the various provisions of the final judgment together with the stipulations of the parties add up to an overall disposition of the assets of this marriage which are affirmable under the Canakaris standard.
The majority states that the judgment on appeal gives no indication as to how the trial judge treated the husband's retirement plan and that the record on that point is confusing. However, it is clear that the trial judge allowed the husband to keep the retirement benefits. I know of no requirement in the law that requires the judge in a dissolution proceeding to state that he is not transferring an asset from one party to another.
The majority opinion goes on to fault the circuit judge for not awarding the wife permanent periodic alimony. I totally disagree. The wife was receiving a salary of $23,000 per year at the time of the dissolution. Granted, the husband was making $44,000 per year. However, the trial judge should be commended rather than reversed for seeking a way through the division of assets rather than through continuing alimony to provide for the future of these two individuals. One or both of the parties was desirous of a permanent parting of the ways. We should not fault the trial judge's discretion in devising a method by which the marriage could be truly ended rather than prolonged through financial dependence ad infinitum. In situations where one spouse is unemployed or where the assets are insufficient, permanent periodic alimony may be a necessity. But that is not the situation here.
The majority, on the other hand, also questions the trial judge's decision in granting rehabilitative alimony to the wife. Again, this was a discretionary act on the part of the trial judge. Viewing it from the judge's vantage point, it could be justified as being a reasonable way to give the wife some time following the dissolution to adjust and establish herself.
The majority also remands for reconsideration, the award of the beach house property to the husband. Again, after employing the Canakaris standard set forth above, I believe that the award is affirmable. It appears to be a reasonable trade off when one considers that: the husband was ordered to pay off the mortgage of the marital home; the wife was given 75% ownership of the marital home; and the wife was given exclusive use of the marital home so long as she lives there and remains unmarried.
NOTES
[1] For example, the trial judge initially ruled that the funds contributed by the husband to his retirement plan were a marital asset, but subsequently, over the husband's counselor's repeated objections, allowed the wife's expert witness to testify at length as to the present value of the husband's potential receipt of retirement benefits under various contingencies. Moreover, the trial judge specifically overruled the husband's counselor's objections to the expert witness' testimony as to the present value of the wife's retirement benefits.
[2] In Witcig, the Nebraska Supreme Court quoted the following from Howard v. Howard, 196 Neb. 351, 242 N.W.2d 884 (1976):

A pension of one party to a marriage, unless its terms provide otherwise, is not a joint fund for the benefit of the other party and is not ordinarily subject to division as part of a property settlement.... There are situations where retirement income must be considered in providing for the care and maintenance of the divorced wife. In those situations, it is considered as a source for the payment of alimony, not as a part of a property settlement. Such a situation is found in Albrecht v. Albrecht (1973), 190 Neb. 392, 208 N.W.2d 669.
Witcig, 292 N.W.2d at 793. We concur in this reasoning.