528 So.2d 931 (1988)
Geraldine G. CARROLL, Appellant,
v.
Paul J. CARROLL, Appellee.
Nos. 86-2169, 86-2896.
District Court of Appeal of Florida, Third District.
July 5, 1988.
Rehearing Denied August 17, 1988.
Ira L. Dubitsky; Cooper, Wolfe & Bolotin and Joan M. Bolotin, Miami, for appellant.
Herbert Stettin, Miami, for appellee.
Before HUBBART, DANIEL S. PEARSON and FERGUSON, JJ.
PER CURIAM.
On Mrs. Carroll's first appeal from the final judgment of dissolution we concluded, inter alia, "that the distribution of the marital assets between the husband and the wife was not made equitably" and remanded the case to the trial court to make an equitable distribution. Carroll v. Carroll, 471 So.2d 1358, 1361 (Fla. 3d DCA 1985). We now review the product of this remand  the trial court's Final Judgment on Remand  and conclude that it is flawed in only one significant respect: it fails to award to the wife an equitable share of the husband's retirement plans, or its monetary equivalent. For this reason, we again reverse and remand the cause.
At the post-remand hearing, the wife contended that the assets of three retirement plans owned and established by the husband were marital assets, subject to equitable distribution like any other marital asset.[1] The trial court valued the husband's vested interests in these plans as of the date of dissolution as $830,000, and this valuation is supported by substantial competent evidence.[2] The wife suggested that the trial court determine the percentage to *932 which she was entitled and then allocate an amount equivalent to this percentage from the most appropriate plan. The husband responded that, as in Diffenderfer v. Diffenderfer, 456 So.2d 1214 (Fla. 1st DCA 1984), the retirement plans should not be treated as part of the marital estate subject to equitable distribution. Choosing to follow the First District's opinion in Diffenderfer, the trial court determined that the husband's "interest[s] in the retirement pension plans are not considered as a marital asset for purposes of equitable distribution in this case but have been considered as a part of the alimony award in making that award [made permanent by the Third District]."[3]
Recognizing that Diffenderfer was then under consideration by the Florida Supreme Court, the trial court reserved jurisdiction to revisit the equitable distribution issue. About a month later, the Florida Supreme Court held, contrary to the district court, that "a spouse's entitlement to pension or retirement benefits must be considered a marital asset for purposes of equitably distributing marital property." Diffenderfer v. Diffenderfer, 491 So.2d 265, 270 (Fla. 1986).
As promised, the trial court revisited its earlier ruling. The husband urged that the Supreme Court's decision required no change in the trial court's ruling: the assets distributed to the wife were liquid and free and clear of debts; thus, the wife had been fairly treated and had not been short-changed. The wife contended that because the court declared its distribution to be "fair and equitable" without including the retirement plans in the marital assets to be distributed, it could no longer declare the same distribution "fair and equitable" when the marital assets were increased, as Diffenderfer now demanded, by $830,000. Nonetheless, the trial court ruled that it would "not disturb the prior order and ... that equitable distribution has still been made even after Diffenderfer, which the court has read and considered... ." Thus, the distribution of the marital assets (now increased by $830,000, all of which was to go to the husband) had gone from sixty percent to the husband and forty percent to the wife before the supreme court opinion in Diffenderfer to sixty-seven percent to the husband and thirty-three percent to the wife after Diffenderfer. The wife appealed.
Whether the trial court's action is, as the wife contends, a refusal to consider the retirement plan assets as marital assets, or is instead an effort to secure the wife's future alimony, the trial court erred. In our view, once the fairness of a distribution scheme that excludes a particular asset has been ascertained, a trial court cannot, without articulating a compelling reason, thereafter include the asset and declare equitable the failure or refusal to distribute the assets in proportion to the prior distribution.
No compelling reason for a disproportionate award of the retirement plans exists in this case. The husband has no present need of funds from the retirement plans to defray his support obligation to his wife; his present earnings are ample. See Carr v. Carr, 522 So.2d 880 (Fla. 1st DCA 1988) (failure to consider pensions as distributable marital property is reversible error; disproportionate award cannot be justified by support obligation). Moreover, as the judgment now stands, in the event that the obligation to pay alimony ceases on account of the husband's death or her death or remarriage, see Cowan v. Cowan, 389 So.2d 1187 (Fla. 5th DCA 1980), the wife would receive none of the asset, and the husband or his estate would receive all of it.
Diffenderfer approved the consideration of pension benefits "as a source of payment of permanent periodic alimony," Diffenderfer v. Diffenderfer, 491 So.2d at 267, in a context in which pension benefits are the present source of income for the party who is compelled to pay the alimony award. Indeed, it is only in this context that it can *933 be said that the same asset is considered as both a marital asset subject to distribution and a factor in calculating a spouse's ability to pay support. But where, as here, the retirement benefits are not being used to pay alimony, there is no justification for excluding the benefits from the assets subject to distribution, since it cannot be said the same asset is being counted twice.[4]
Accordingly, the Final Judgment on Remand is reversed in part, with directions to award the wife a share of the present value of the retirement plans proportionate to her share of the initial distribution of marital assets made after remand.[5] The present value of the retirement plans should, however, exclude any contributions that may have been made by the husband after the original final judgment of dissolution. Howerton v. Howerton, 491 So.2d 614 (Fla. 5th DCA 1986). See also Reyher v. Reyher, 495 So.2d 797 (Fla. 2d DCA 1986). The distribution should be made so as to maximize the tax advantages to both parties and not jeopardize other assets or the plans' compliance with the rules and regulations of the Internal Revenue Service. The trial court may, of course, fashion the distribution of the different retirement plans according to their restrictions on transfer of ownership and, if necessary, delay distribution until the maturity of the pensions. In all other respects, the Final Judgment on Remand is affirmed.
Reversed in part; affirmed in part.
NOTES
[1] At the hearing, the wife's attorney observed:

"After 24 years of marriage they built a small financial empire together through their joint efforts... . The pension plans in this particular case were built with the intention of preserving both of their futures when they reached the old age, not just his... ."
[2] The valuations as of August 1, 1984, five months after dissolution, were as follows:

Money purchase plan ............... $519,575
Defined benefit plan # 1 .......... $310,116
Defined benefit plan # 2 .......... 34,709
 ________
TOTAL ............................. $864,400

The parties differ about the value as of March 1, 1984, the date of the original final judgment, the husband contending they were worth about $40,000 less, and the wife contending that they were worth about $20,000 more. The trial court was free to accept the husband's evidence on this score.
[3] In the first appeal, this court reversed the trial court's award of rehabilitative alimony and directed that it be made permanent.
[4] Because the asset is not part of the calculus of the husband's ability to pay, the distribution of an equitable portion of it to him will not preclude him from seeking in the future a reduction of the alimony payments in the unlikely event that he can no longer afford to make them.
[5] Our reading of the record shows that the distribution of the marital assets after remand was 60.431 percent to the husband and 39.569 percent to the wife.