STONE, J.
The husband appeals a final judgment of dissolution. We reverse in part and affirm in part.
The parties were married for eleven years. At the time of the dissolution, the husband was 66 and the wife was 62. The final judgment invalidated the parties’ “partnership” agreement, valued and distributed the marital estate, and denied the wife’s request for permanent alimony. Each party was ordered to bear his/her own fees and costs.
Prior to the marriage in 1987, the husband owned a company, Marketing Association Services (MAS) that runs trade shows. The major show is a woodworking trade show put on in California biennial for the Association of Woodworking and Furnishing Suppliers (AWFS). During the course of the marriage, the company expanded to provide management for five or six trade associations, publish a newsletter, produce consumer woodworking shows, and produce several other consumer shows. In 1992, MAS began to divest itself, and some of the activities were spun off and licensed to a third party unrelated to the husband, Devine Marketing Group. In 1992, when the couple moved to Florida, the husband set up a corporation called Kachina Marketing to “serve as a conduit ... to receive consulting income from ... whatever business I might generate while I was in Florida.” Kachina Marketing and Devine Marketing Group had a consulting agreement. In 1995, Kachina Marketing was dissolved at about the time this action was filed, and replaced by Art Schwartz and Associates. The wife filed a petition for dissolution in October 1995.
*681 There is evidence in the record of some joint funds going into the husband’s business, Kachina Marketing, as well as evidence that for several years the wife worked part-time for MAS.
In 1990, the husband’s daughter, Ellen Schwartz (Ellen) went to work for MAS, with the wife’s encouragement, so that the husband could spend more time in Florida. At that time, Ellen entered into an agreement and signed a letter which represented a summary of the terms of her employment with MAS. The agreement did not transfer an ownership interest to her, but provided that her father would take a less active role in the company and she would be given a six or seven year period to buy into the company and become a 5%o partner with her father. The agreement also provided that “if the contract with the sponsoring AWFS group is renewed past the 1997 show, your total compensation will be a draw against fifty percent of the net income.” Ellen assumed responsibility for all aspects of the trade show portions of the business, including marketing to attendees and soliciting vendors or exhibitors. She ran the bi-annual shows in 1993, 1995, and 1997. Revenues during that time increased substantially.
In May 1995, a dispute arose between AWFS and MAS which resulted in a settlement and the ultimate termination of the contract between AWFS and MAS for the production of the trade shows as of May 1997. Ellen and the husband were both involved in the settlement negotiations. The settlement agreement contains a non-compete agreement prohibiting both Ellen and the husband from producing trade shows in the entire western half of the country. Under the terms of the AWFS settlement, MAS is to be paid $4,000,000, payable in annual installments of $666,666 for a six year period.
One month prior to the date of the settlement agreement, Ellen had signed an employment termination agreement with MAS, which provides that she is to receive $1,050,000 of the settlement with AWFS. One month after the date of the settlement agreement, and during the pendency of the dissolution proceeding, the husband also gifted Ellen some stock in his company. Ellen testified
The AWFS settlement had an overall dollar value of four million dollars. My entitlement was to half of that. There’s also some payments that are based on performance that are paid out over time. If those are realized, then I’m entitled to half of those as well.
Ellen’s claim to half of the settlement payments is based on her contention that after the 1997 show, she was a partner on all the business going forward. As the AWFS settlement was a resolution of business going forward, she lost her half of future earnings and gave up her ability to put on future shows by agreeing to sign the sale documents, including the covenant not to compete. Her signature on those documents was apparently a condition of the settlement.
The wife’s accountant, Frank Briscoe (Briscoe), originally valued MAS at approximately $1 million as of the date the petition for dissolution was filed. That figure did not include a valuation of the pending litigation with AWFS. After AWFS purchased MAS stock for $4 million, Briscoe amended his valuation and assessed a present value of MAS at $1,838,000. Briscoe also testified that the value of MAS would be decreased by $567,000, net of taxes, if the promised $1 million payment to Ellen were deducted. In addition, he also acknowledged that the value of the business should be reduced to a figure net of taxes.
The husband’s accountant, David Ellrich (Ellrich), valued MAS at $1 million as of the date of the filing of the petition for dissolution. In his valuation of the company, Ellrich considered the AWFS settlement only to the extent that MAS was allowed to produce the 1997 show. He did not consider any future cash flows from the settlement because he opined that any *682 cash flow was off-set by the non-compete agreement restricting the husband and Ellen from putting on any future shows.
The court concluded MAS was a marital asset, the value of which increased from $350,000, its value six months prior .to the marriage, to $4,000,000, a difference of $3,650,000. The court ordered that the enhancement “should be equally distributed between the parties over the next six years in conformity with the AWFS payment schedule.” The court ordered that the enhanced value of the company should be equally distributed between the parties not only because the assets were commingled, but also because the wife worked for the company during the marriage.
The court ordered that the husband should be solely responsible “for any claim by his daughter to a portion of MAS proceeds which he allegedly gifted to her.” Based on the wife’s receipt of a substantial equitable distribution putting the parties on equal financial footing, the trial court denied the wife’s request for permanent alimony, and ruled that each party would bear his/her own fees and costs.
We reverse as to the equitable distribution. First, the court failed to consider tax consequences in ordering the husband’s payments. Second, the court erroneously assigned to the husband the responsibility for all debt owed to Ellen. The court also failed to consider the possibility that AWFS might default on the settlement payments.
We note that the husband agrees that the settlement need not be reduced to present value because the payments are due in installments, and the wife acknowledges on appeal that each party should be responsible for taxes on his or her share of the proceeds. Because the plan of distribution shows the entire value of the settlement payments in the husband’s column, remand is required to clarify the court’s intention, so that the husband does not ultimately become responsible for the entire tax burden of the settlement payments. See Vaccaro v. Vaccaro, 677 So.2d 918 (Fla. 5th DCA 1996).
In addition, the record does not support the trial court’s failure to fully consider Ellen Schwartz’s interest in the MAS-AWFS settlement. In 1997, Ellen and MAS entered into an employment termination agreement, with the following pertinent provisions:
Pursuant to the Employment Agreement, it was'the intent of both Employer and Employee that commencing in 1998 Employee’s compensation would be an amount equal to 50% of the pre-tax net income of Employer;
Arthur A. Schwartz, the sole shareholder of Employer, has been negotiating with the Association of Woodworking & Furnishing Suppliers (“AWFS”), ..., the owner of the trade show, for the sale of all of the stock or assets of Employer to AWFS on January 5, 1998 for a minimum selling price of $4 million;
Employer and Employee wish to settle all of Employer’s and Employee’s obligations under the Employment Agreement so that the sale of Employer’s stock or assets may be accomplished unimpeded by any obligations of Employer under the Employment Agreement after December 31,1997.
NOW, THEREFORE, it is agreed among the parties as follows:
Termination of Employment Agreement on December 31, 1997. In consideration of Employee agreeing to terminate the Employment Agreement effective December 31, 1997 and as additional consideration for the important contributions made by Employee to Employer, Employer agrees to pay Employee the sum of $1,050,000 in cash on or prior to December 31, 1997.
The termination agreement also contains a mutual release provision, a provision for Ellen’s waiver of unknown claims, and other provisions for attorney’s fees, etc.
In the final judgment, the trial court rejected any claim that Ellen was entitled *683 to any portion of the settlement proceeds other than as recipient of a gift by the husband. Instead of viewing the obligation to Ellen as a business liability of MAS, the trial court determined that it was the husband’s obligation, and ordered that any sum due Ellen be satisfied from the husband’s share of the equitable distribution.
The trial court made no findings nor did it supply a reason for not recognizing the legitimacy of any of the MAS obligation to Ellen. Although certainly such a conclusion would be within the court’s discretion where supported in the record, see Herzog v. Herzog, 346 So.2d 56, 58 (Fla.1977), here, the record reflects only that MAS had an obligation to Ellen, which was memorialized by the employment termination agreement. It is significant that nothing in the record indicates that the provision for payment to Ellen is anything other than a valid business obligation. The settlement with AWFS resolved existing litigation, a suit that was filed by AWFS against MAS and the husband. It is undisputed that for several years Ellen had been running the essential part of the business; promoting trade shows had become her career. Ellen’s signature was necessary to resolve the litigation, and she signed a significant covenant not to compete as part of that resolution. Ellen was also expected to continue to perform services for some period after the settlement. Assigning the obligation to pay Ellen solely to the husband without explanation by the court is an unsupported enhancement of the wife’s distribution.
We find no abuse of discretion with regard to the trial court’s decision insofar as it relates to the gift of stock and requiring the husband to bear that portion of the obligation to Ellen. As to all other issues raised, we find no reversible error or abuse of discretion. Upon remand, the trial court is free to reconsider any aspects of the judgment that are founded upon any equitable distribution provisions that may be modified.
POLEN and STEVENSON, JJ., concur.