995 So.2d 519 (2008)
Robert BURNETT, Appellant,
v.
Kenya BURNETT, Appellee.
No. 2D07-3494.
District Court of Appeal of Florida, Second District.
May 30, 2008.
*520 Jane H. Grossman of Law Office of Jane H. Grossman, St. Petersburg, for Appellant.
Starlett M. Miller, St. Petersburg, for Appellee.
ALTENBERND, Judge.
Robert Burnett, the Husband, appeals a final judgment of dissolution of marriage that awarded his Wife, Kenya Burnett, primary residential responsibility of the couple's two minor children. The final judgment also awarded the Wife exclusive use and possession of the marital home and made certain financial provisions involving child support that the Husband challenges. A convergence of circumstances made the trial court's task quite difficult in this case. Ultimately, the trial court concluded that the children needed the stability of the family home. Even though the Wife had not been living in the home for a significant period, the trial court awarded her primary residency of the children and the exclusive use and possession of the home, requiring the Husband to vacate the residence. Unfortunately, the evidence does not suggest that this couple has the financial ability to maintain this house as tenants in common if either parent is living in a separate location. Because the long-term ownership of the home was central to both the trial court's decision on child custody and on several financial issues, we must reverse the substantive provisions of the judgment regarding child custody, child support, and the marital home and remand for further proceedings.

I. PROCEEDINGS IN THE TRIAL COURT
The parties were married in 1996 but had been together for twenty-one years when the Husband filed his petition for dissolution of marriage on September 9, 2005. Together, they had five children. *521 At the time of the final hearing, only two of the children were minors. The parties' only significant asset was the marital home, which was owned jointly and valued at approximately $185,000. The home was subject to a mortgage of $131,000. The note and mortgage were in the Husband's name only, and the monthly payment was approximately $1500.
When the parties separated in early 2005, the Wife left the residence while the Husband remained in the marital home with the children and paid the expenses associated with the home. When he filed his petition for dissolution of marriage, the Husband also filed a financial affidavit indicating he earned a monthly net income of $3290 from his employment as a wastewater technician. In April 2006, the Wife filed a financial affidavit indicating she was employed at a healthcare facility as an admissions director earning net monthly income of $2300. After a hearing in August 2006, the trial court ordered the Wife to pay $916 per month in temporary child support, apparently based upon these income figures. Although the Wife's initial pro se pleadings had conceded the Husband should have primary residential responsibility for the children, the Wife amended her pleadings in late August 2006 to request primary residency of the children.
When the parties appeared for trial in June 6, 2007, things had substantially changed for each of them. The Husband had lost his job and was unemployed. He testified he was volunteering for an organization that provided outreach to homeless men. He believed that the organization was going to hire him for a paid position within a few weeks with a yearly salary of $25,000. The Wife testified that she too was unemployed and also volunteering for a religious organization. She hoped that the volunteer position would become a paid position, but she had no details regarding the income this job might provide. From the separation in April 2005 until the final hearing in June 2007, the Wife had paid the Husband only $324 in support, notwithstanding the August 2006 order requiring her to pay child support of $916 per month. Thus, the Husband had provided the sole financial support for the children and had paid the monthly mortgage payments on the marital home.
Although both parties presented evidence to the court, neither party presented evidence that would have permitted the trial court to adequately address the financial issues.[1] On its face, the evidence reflected two unemployed persons with no income, and there was no evidence from which the court could have imputed income. Although the Husband testified to an expected gross salary, there was no indication what his net monthly income might be or whether the job would provide health or life insurance.
The parties spent the majority of the hearing presenting evidence regarding child custody. Neither parent was unfit to be given custody, and both had provided primary care for the children in the past. As is often the case, each party had areas of weakness or challenges relating to their ability to serve optimally as the primary custodial parent. Unfortunately, neither party provided the trial court with a realistic proposal to resolve the couple's financial *522 issues while adequately protecting the interests of the two minor children.
Ultimately, the court concluded that it could not decide the issue of child support because the parties had presented insufficient evidence in this regard. The court decided to effectively bifurcate the proceedings by ruling on the issue of child custody but reserving jurisdiction to make a final determination of child support. In making the custody determination, the court relied heavily on the stability the marital home could provide for the children. In the final judgment, the trial court specifically stated that the factor provided for in section 61.13(3)(d), Florida Statutes (2007), which requires a court to assess the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity, was a "significant" factor in this case:
The minor children have been residing in the ... jointly owned marital home. They have attended ... an elementary school, K through 5. The ten-year-old is going into fifth grade and the five-year-old is enrolled for school there next year. This has been the ten-year-old's school since she started school, and it appears to the Court that this is the intended school of both of the parties for the youngest child also, at least through elementary school, and the testimony has been that the oldest child has done well there, is an A student, seems happy. By all evidence shown ..., it appears that this is a stable situation in terms of schooling, and it also appears to the Court that the home situation and staying in the home is a stable and desirable environment for the children, rather than having to vacate the home and live somewhere else.
In considering the factor in section 61.13(3)(e), the permanence as a family unit of the existing or proposed custodial home, the court found "that the marital home is a permanent home for the children and the only home proposed by either of the parties in this case, and that is where the children should remain. The question is which of the parents will remain there with the children."
Based upon the court's conclusion that the home itself provided stability and permanency for the children, regardless of which parent might reside there with them, the court considered the other best interest factors and concluded they weighed in favor of awarding the Wife primary residential responsibility for the children. The court thus also ordered that the Wife would have temporary exclusive use and possession of the home until the children were emancipated. The Husband was to vacate the home but was to have shared parental responsibility with the Wife and liberal visitation with the children.
Although the court found the evidence insufficient to decide child support issues and thus decided to reserve jurisdiction in that regard, the court proceeded to conclusively decide some of the financial issues. First, the court did not expressly retain jurisdiction to enforce or reassess the temporary child support the Wife was ordered to pay while the children were in the temporary primary care of the Husband, effectively expunging any obligation. Second, the court expressly held that the Husband would receive no reimbursement or credits for his payment of the entire monthly mortgage payments since the separation or the date he filed his petition for dissolution because the court considered these payments "a form of temporary support." Finally, the court ordered that while the Wife had exclusive use and occupancy of the marital home, each party would pay one-half of the $1500-per-month mortgage payment; when that period ended the *523 home would be sold and the proceeds divided equally. It is perhaps possible the court meant for one or more of these provisions to be temporary or subject to review when the court addressed child support, but the judgment makes no such express reservation over these issues.

II. THE INTERRELATED FINANCIAL AND CUSTODIAL ISSUES IN THIS CASE
We begin by noting that financial provisions in a final judgment of dissolution of marriage are often interdependent upon each other. See, e.g., Rodriguez v. Rodriguez, 958 So.2d 436, 437 (Fla. 3d DCA 2007). The trial court must consider such provisions as a whole. In this case, the trial court erred in attempting to finally determine some of the financial provisions regarding the support of the children while deferring ruling on child support in general. Interdependence of financial and custodial issues is undoubtedly less common, but it too exists in this case.
The trial court made three financial decisions that we must reverse. First, the trial court erred in failing to either address the Wife's nonpayment of temporary support or to reserve jurisdiction to do so when the court revisited the issue of child support. This court has held that nonpayment of temporary child support during the pendency of a dissolution action should be addressed at the final hearing so that the trial court may fix the amount of any prejudgment arrearage and, if necessary, make an appropriate adjustment in the final judgment. See Conte v. Conte, 858 So.2d 1165, 1166 (Fla. 2d DCA 2003) (quoting Sims v. Sims, 846 So.2d 1188, 1188 (Fla. 4th DCA 2003)). Although the Husband did not have a vested interest in the precise amount of the temporary child support award, the court was required to address whether the award was appropriate or subject to adjustment based upon the evidence presented at the final hearing. If the evidence presented at the final hearing was insufficient to do so, the court should have reserved jurisdiction to address this issue when it decided a final child support award.
Second, given that the Husband had provided all of the financial support for the children during the pendency of the dissolution proceedings and received no credit or payment for the court-ordered support the Wife failed to pay, there was no basis for the trial court to also deprive the Husband of any credit for his full payment of the monthly mortgage during this time by claiming the payment was in the nature of temporary child support. Rather, this issue also should have been reserved until the court could address the final award of child support.
Finally, the trial court erred by awarding the Wife the temporary exclusive use and occupancy of the home and requiring each party to pay approximately $750 per month toward the mortgage without evidence to support a finding that these provisions were financially feasible for the parties. See § 61.075(1)(h), Fla. Stat. (2007) (requiring court to consider the desirability of maintaining a marital home for the benefit of dependent children "when it would be equitable to do so, it is in the best interest of the child or that party, and it is financially feasible"); see also Delgado v. Delgado, 920 So.2d 661, 662-63 (Fla. 3d DCA 2005). There was certainly no evidence the Wife could afford her portion of this payment. Again, although this provision reads as a final provision, the parties' ability to comply with this provision would be directly affected by a future determination of child support.
In many cases, this court's decision to reverse financial portions of a final judgment *524 may not have any effect on decisions regarding child custody. Here, however, the trial court's custody determination was interrelated with the financial provisions of the final judgment. The trial court based its custody decision in large part upon the consistency, stability, and permanency the family home would offer the children regard-less of which parent provided their primary care. Each parent had issues that would reasonably cause a trial court concern in making a custody determination. It is clear from this record that the trial court was essentially giving the children the home and then placing the Wife in the position of primary custodial parent because the trial court concluded that so long as the children had the consistency the home offered, the Wife would be the slightly better parent.[2]
The court made this decision, however, without competent, substantial evidence that the home could be maintained based upon the financial resources of the parties. Indeed, the Wife had no income with which to pay one-half of the monthly mortgage payment and although the Husband anticipated a gross monthly income of $2083, there was no evidence he could afford his portion once he vacated the marital home, established another residence, and was ordered to pay child support. Effectively, the judgment required the parties to pay a $1500-per-month mortgage payment with a combined gross monthly income of just over $2000.
We recognize that a trial court's custody determination is reviewed for an abuse of discretion, and such a determination generally should be reversed only when no reasonable person would take the view adopted by the trial court. See, e.g., Artuso v. Dick, 843 So.2d 942, 944 (Fla. 4th DCA 2003). In this case, if the trial court's decision were based solely upon an assessment of the factors in section 61.13(3) without reference to the marital home, it would be difficult to conclude the trial court abused its discretion. Moreover, if the court had considered the financial feasibility of maintaining the home and competent, substantial evidence supported a finding that the home was financially secure, it would be difficult to find an abuse of discretion. However, we conclude it was an abuse of discretion to rely heavily upon the availability and stability of the marital home in making the custody determination without adequately assessing whether it was economically feasible for the parties to maintain that home. Indeed, the evidence suggested the parties would not be able to maintain the home.
We therefore reverse those portions of the final judgment that (1) awarded the Wife primary residency of the children and the exclusive use and occupancy of the marital home, (2) required each party to pay one-half of the monthly mortgage payments *525 during the Wife's term of exclusive use and occupancy, (3) deprived the Husband of any credit for mortgage payments he made while the dissolution proceeding was pending, and (4) failed to address or reserve jurisdiction over the issue of outstanding temporary support. Because significant time has elapsed since this judgment was entered and the current financial positions of the parties are uncertain, the court will need to reconsider these issues after an evidentiary hearing.
Affirmed in part, reversed in part, and remanded.
SALCINES and STRINGER, JJ., Concur.
NOTES
[1] The Wife appeared pro se at trial. In lieu of direct testimony, she read a statement that primarily discussed the issues relating to child custody. This added to the complexity of the trial. It is noteworthy that the attorneys in this appeal were not counsel in the trial court proceeding. They have presented the issues well for this family of limited resources, and neither has requested an award of fees from this court.
[2] Notably, the Wife had experienced significant difficulty maintaining a stable residence, transportation, or employment after she moved from the marital home. The trial court apparently concluded this problem could be resolved by the award of exclusive use and occupancy of the home. In light of this and the trial court's apparent conclusion that the parties were equal in regard to many of the other factors in section 61.13(3), it may not have been unreasonable for the court to marginally consider the Husband's nineteen-year-old criminal conviction, resulting in a jail term, when deciding custody. Nevertheless, we are concerned about the weight the trial court may have placed on this dated conviction, particularly in the absence of any evidence that the matter continued to be relevant to child custody issues at this time. Indeed, the Wife appears to have admitted that she did not believe the conviction reflected on the Husband's current ability to care for the children. Because we reverse the custody determination for other reasons, we need not address whether the court's emphasis on this conviction alone merits reversal.