85 So.3d 527 (2012)
A.L.G., Appellant,
v.
J.F.D., Appellee.
No. 2D10-3887.
District Court of Appeal of Florida, Second District.
April 4, 2012.
*528 Ama N. Appiah of Law Office of Ama N. Appiah, P.A., St. Petersburg, for Appellant.
Jane H. Grossman of Law Office of Jane H. Grossman, St. Petersburg, for Appellee.
NORTHCUTT, Judge.
A.L.G. appeals the final judgment in a paternity action brought by the child's father, J.F.D. We conclude that the trial court's oral findings and the evidence did not support its decision on time-sharing. Accordingly, we reverse the time-sharing schedule established by the final judgment.
A.L.G. and J.F.D. are the unmarried parents of a son born in January 2008. J.F.D. is a longtime resident of St. Petersburg. A.L.G. has made her career in the military and was stationed in Orlando when the child was born. A few months after the child's birth, the mother learned that she would be transferred. Prior to the move, she gave the father written notice of her intent to relocate. He responded with an objection to the relocation and a petition to establish paternity, parental responsibility, time-sharing, and child support. In November 2008, the mother relocated to her new post in California.
After a hearing, which was not transcribed for our record, the circuit court entered a temporary order on time-sharing. The temporary order established a rotating parenting schedule in which the child was to spend six weeks with his mother in California followed by three weeks with his father in Florida. This schedule remained in effect until the final hearing in January 2010, when the child was two years old.
The parties were the only witnesses at the final hearing. Both of them expressed dissatisfaction with the temporary time-sharing schedule. The father testified that his three-week intervals were not long enough for him to establish a routine and that he would like the child to live primarily with him. In the alternative, he favored increasing his share of the rotation from three weeks to six. The mother complained that the child was clingy after visiting his father and that the three-week visits caused regressions in developmental activities such as potty training, eating with utensils, and learning letters and numbers. She proposed having the child live primarily with her during the school year and spend eight weeks with his father during the summer plus an additional week at spring break and another week in the fall or winter. Both parents observed that the frequent cross-country flights were hard on their son.
*529 At the conclusion of the hearing, the trial court orally announced findings. The court recognized that both parties were good people who loved their son and that both agreed that the travelling was not in the boy's best interests. The court found that the child lacked continuity and stability because of the schedule and that shuttling him between California and Florida was not in his best interests, regardless of whether it was a schedule of six weeks with one parent and three weeks with the other or six weeks with each. The court also found that it was in the child's best interests to spend the primary amount of time with his mother. The court stated that she was more focused on things that the child needed at this stage in his life.
Surprisingly, however, the court proceeded to order a rotating schedule of six weeks with each parent, apparently because the parents had made the decision to live on opposite sides of the country and, the court said, "it works for you." The court indicated that it considered the time-sharing schedule to be somewhat of a temporary arrangement because the mother was anticipating another reassignment in two years and the child would be reaching school age. The court explained that this schedule would mean less travel for the child, but the court did not expect it to offer more stability. Later, in its written final judgment the court observed that "[b]oth parties testified that the cross-country flights were not comfortable for the minor child and the cost was becoming burdensome." Beyond a conclusory statement that it was in the child's best interest to visit his parents on a six-week rotation, the judgment contained no other findings pertinent to the time-sharing schedule.
On appeal, the mother argues that the trial court abused its discretion in ordering the alternating six-week time-sharing schedule and that, although the final judgment stated that this was in the child's best interest, the court found otherwise at the hearing. We recognize that broad discretion is given to a trial court in such decisions. See Burnett v. Burnett, 995 So.2d 519, 524 (Fla. 2d DCA 2008). This discretionary power is not without limitation, however, and an abuse of discretion is shown "when the judicial action is arbitrary, fanciful, or unreasonable." Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980) (citation omitted). "The trial court's discretionary power is subject only to the test of reasonableness, but that test requires a determination of whether there is logic and justification for the result." Id.
The legislature has determined that a trial court's decision on time-sharing must be made with the best interests of the child as the primary consideration, and it has prescribed a number of factors that the court must consider in making its decision. See § 61.13(3)(a)-(t), Fla. Stat. (2010). The court's decision must conform to the shared parental responsibility law in section 61.13 even if the parents are unmarried. See Decker v. Lyle, 848 So.2d 501, 503 (Fla. 2d DCA 2003) (addressing temporary order). Section 61.13(3) does not require a trial court to make specific findings of fact supporting a custody decision in its final judgment. Bader v. Bader, 639 So.2d 122, 124 (Fla. 2d DCA 1994) (en banc). But "the record or the final judgment must reflect that the custody determination was made in the best interests of the child." Decker, 848 So.2d at 503.
We have reviewed the record and considered the evidence in light of the statutory factors bearing on time-sharing decisions. There was ample evidentiary support for the trial court's findings that the parties' son lacked continuity and stability because of the temporary rotating time-sharing schedule, that transporting him across the country was not in his best interests regardless of whether the rotation *530 was every six weeks or alternating six weeks and three, and that it was in his best interests to spend most of his time with his mother. In light of this, ordering six-week rotating time-sharingwhile acknowledging that the new schedule would not bring stability to the child's lifewas illogical and unjustified. As such, it was an abuse of discretion. We reverse it and remand for the court to revisit the time-sharing schedule.
This case made it to our docket in the fall of 2011. At the final hearing, the mother testified that she anticipated being reassigned in November 2011, hopefully to the East Coast. On remand, the court may take additional testimony to ensure that its time-sharing decision will be supported by evidence of the parties' current state of affairs. Cf. Austin v. Austin, 12 So.3d 314, 318 (Fla. 2d DCA 2009) (noting that additional evidence was warranted on remand due, in part, to original testimony of future events that may or may not have occurred); Burnett, 995 So.2d at 525 (allowing for an evidentiary hearing on remand "[b]ecause significant time has elapsed since this judgment was entered and the current . . . positions of the parties are uncertain").
On the issue of child support, both parties agreed that the trial court could make guideline calculations based on the parties' financial affidavits. We find no error in the child support award, but on remand the court should revisit it to factor in changes in the parties' circumstances or the time-sharing schedule.
Affirmed in part; reversed in part; remanded.
WHATLEY and WALLACE, JJ., Concur.